James J. Pisanelli, Esq., Bar No. 4027
JJP@pisanellibice.com
Christopher R. Miltenberger, Esq., Bar No. 10153
CRM@pisanellibice.com
Eric T. Aldrian, Esq., Bar No. 11897
ETA@pisanellibice.com
PISANELLI BICE PLLC
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169
Telephone: 702.214.2100
Facsimile: 702.214.2100

Attorneys for SHFL entertainment, Inc.
f/k/a Shuffle Master, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

LT GAME INTERNATIONAL LTD.,

vs.

SHUFFLE MASTER, INC.,

Case No.: 2:12-cv-01216-GMN-GWF

**OPPOSITION TO PLAINTIFF LT GAME INTERNATIONAL LTD.'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

## I. INTRODUCTION

Plaintiff LT Game International Ltd.'s ("LT Game") request for leave to amend its First Amended Complaint is a too little, too late attempt to save their lawsuit. For months Defendant SHFL entertainment, Inc. f/k/a Shuffle Master, Inc. ("Shuffle Master") has told LT Game that its pleadings are insufficient and do not give Shuffle Master adequate notice of its claims. LT Game unabashedly asserted that it had no duty (nor ability) to provide Shuffle Master with more information about its claims or even the purportedly interested parties in the case.

LT Game's position abruptly changed on January 24, 2013, however, when Magistrate Judge Foley warned LT Game during a hearing on Shuffle Master's Motion to Compel Initial Disclosures that, in his opinion, this Court would likely grant Shuffle Master's Motion to Dismiss the First Amended Complaint. As LT Game concedes in its Motion for Leave to File Second Amended Complaint (the "Motion"), once "the Magistrate Judge intimated that [LT Game's] First

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

Amended Complaint may have been sparse on specific allegations," and would likely be dismissed, LT Game realized it was finally time to look at its claims and amend its pleading yet again. (*See* Mot., 8:9-10.) However, the time for LT Game to investigate its claims was ***before*** filing them in federal court, not after. LT Game cannot rely upon Rule 15 as an excuse for its lack of diligence in filing this lawsuit. The Court can and should deny the Motion for that reason alone.

But there is more. LT Game has admitted its own bad faith and dilatory motive in refusing to investigate its claims before filing the Complaint. The Court may rightly consider this fact in its review of Plaintiff's Motion. Likewise, the Court may also consider the fact that LT Game has failed to cure the deficiencies Shuffle Master has repeatedly pointed out in LT Game's prior pleadings. And, the Court must certainly give significant weight to the substantial prejudice LT Game's proposed amendment would have on Shuffle Master. Shuffle Master has been demanding more information from LT Game for months to no avail, only to have LT Game claim to "discover additional facts" that seek to change the entire nature and scope of this case. It's far too late for that.

If the Court had any lingering doubt as to whether it should deny the Motion, all such doubt should be cast aside when recognizing the futility in allowing LT Game to file its proposed Second Amended Complaint. To begin with, LT Game still has not pled its intentional misrepresentation claims with sufficient particularity, as required under *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003). Even with the proposed Second Amended Complaint, LT Game has failed to tell Shuffle Master what it allegedly said and why it was false and misleading. As a result, even LT Game's proposed Second Amended Complaint is subject to dismissal under Rule 9(b) and Rule 8.

Equally important, neither LT Game nor the proposed new plaintiff, LT Game (Canada) Ltd. ("LT Game (Canada)") (together, with LT Game, the "Proposed Plaintiffs"), has standing to maintain this action against Shuffle Master. Not only did neither Proposed Plaintiff operate as of July 10, 2012 (when LT Game filed this lawsuit), but by their own concessions, they still do not conduct business in the State of Nevada or even have gaming licenses to conduct business in this

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

state. Even if they are currently applying for a gaming license, they may never get one. As a result, the Proposed Plaintiffs are unable to establish a non-speculative injury in fact, as required for Article III standing.

Regardless, even if these parties had standing (which they do not), LT Game alone knew about the existence of any claims on behalf of LT Game (Canada) from the inception of this lawsuit. LT Game cites to no "newly discovered" facts, nor could it, relating to this new proposed plaintiff that justifies the delay in bringing these claims on behalf of LT Game (Canada), to Shuffle Master's prejudice. LT Game had an obligation to make the new proposed plaintiff a party from the start if it truly believed LT Game (Canada) had suffered damages based on the allegations in the complaint. Instead, LT Game did no such thing and delayed seeking to add LT Game (Canada) as a plaintiff until it was facing the dismissal of its First Amended Complaint. The addition of LT Game (Canada) at this stage is improper.

In the end, the Court has numerous grounds upon which it can deny LT Game's Motion and the Court should exercise its discretion to do so. A denial of LT Game's Motion is necessary to stop LT Game from once again moving the target and changing its story to the detriment and prejudice of Shuffle Master. For any and all of these reasons, Shuffle Master respectfully requests that the Court deny the Motion.

## II. RELEVANT BACKGROUND

### A. <u>LT Game's Failure To Investigate Its Claims Against Shuffle Master.</u>

LT Game's memory is selective, if not strategic. LT Game filed this action against Shuffle Master on July 10, 2012, alleging claims for unfair competition under Macau, federal and state laws, as well as for purported intentional interference with prospective and current contractual relations. (*See generally* Dkt. #1, Compl.) In support of its four claims, LT Game alleged only bare elements of its claims, asserting that Shuffle Master made "misrepresentations" about LT Game and its products with the "intent to interfere and damage [its] business deals with current and prospective customers." (Dkt. #1, Compl. ¶¶ 12-13.) Of course, a party is required to do more than just recite legal elements in a complaint and so, on July 31, 2012, Shuffle Master

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

moved the Court to dismiss LT Game's Complaint pursuant to Rule 12(b)(6), among other reasons. (*See* Dkt #11, Mot. to Dismiss Compl.)

Realizing that its bare-bones Complaint would soon be dismissed, LT Game filed a First Amended Complaint without leave as permitted under Federal Rule of Civil Procedure 15(a)(1)(B). The First Amended Complaint fared no better than the original. All LT Game did was add an allegation that some unknown employee or representative of Shuffle Master made some unidentified statements regarding LT Game's product to unknown employees of LT Game's purported yet unknown potential customers. (*See* Dkt. #14, Compl. ¶¶ 13-15.) LT Game remained silent, however, as to the critical issues of who at Shuffle Master allegedly made the misrepresentations, where, when, and to whom the alleged misrepresentations were made, or even most importantly what the alleged misrepresentations were. (*See generally id.*) As a result, Shuffle Master had to file yet another dispositive motion pointing out LT Game's failure to adequately plead its claims in this case in an effort to avoid having to litigate and defend itself in the dark. (*See generally* Dkt. #17, Mot. to Dismiss First Am. Compl.)

Although the Court has not ruled on Shuffle Master's second motion to dismiss,[1] Shuffle Master has endeavored to still meet its discovery obligations in this case. The parties conducted a Rule 26(f) conference on September 25, 2012. During the conference, counsel for Shuffle Master asked about "the subjects on which discovery may be needed," as required under the Rule. But counsel for LT Game was unable or unwilling to give an answer with any particularity. Instead, he asserted that LT Game was entitled to conduct discovery on all topics and issues raised by the allegations contained in the First Amended Complaint, as follows:

> This case involves unfair competition and tortious interference with business and contractual claims related to Defendant's unlawful actions in international commerce and international trade shows, including, but not limited to, to Defendant's unlawful actions in Macau and Australia.

---

[1] For a complete analysis of why LT Game was required to plead its intentional misrepresentation claims with particularity under Rule 9(b), Shuffle Master directs the Court to the pending Motion to Dismiss the First Amended Complaint, Dkt. #17.

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

(Dkt. #20, LT Game's Prop. Disc. Plan and Sched. Order, 2:12-18.) LT Game's position provided Shuffle Master little guidance in the nature of its allegations.

The same was true with respect to LT Game's initial disclosures. After asking for and receiving two extra weeks to make ensure its initial disclosures would be "complete," on October 19, 2012, LT Game disclosed to Shuffle Master the equivalent of nothing. Thumbing its nose at its obligations under Rule 26(a), LT Game failed to produce or identify a single document, failed to specify the subjects of information or knowledge of its potential witnesses, and failed to give any explanation or computation of its alleged damages. In LT Game's view, it had no obligation disclose anything because the case was still in the "beginning stage of litigation and discovery" and thus it only had to make initial disclosures based on "information available to it at the time." (*See* Dkt. #25, LT Game's Opp'n to Mot. to Compel Initial Discl., 5:18, 7:1.) Thus, as of October 19 (three months after filing this lawsuit), LT Game still had no documents or witnesses to support its claims, and no way to compute damages resulting from Shuffle Master's alleged misrepresentations.

Notably, during a meet and confer pertaining to LT Game's initial disclosures, LT Game's counsel represented that it could not provide more information, either in pleading or disclosures, because even LT Game did not know anything more about the allegations his client had asserted. (*See* Dkt. #24, Mot. to Compel, Ex. A, Miltenberger Decl. ¶ 13.) LT Game simply believed that someone related to Shuffle Master said something about LT Game's products which undermined its ability to conduct business. (*See id.* ¶ 13.) LT Game's counsel conceded that if this Court granted Shuffle Master's Motion to Dismiss the First Amended Complaint for failing to plead in conformity with Rules 8 and 9(b), LT Game would then have to go back and investigate the basis for its claims. (*Id.*) Not wanting to leave anything to chance, Shuffle Master filed a Motion to Compel Initial Disclosures on November 7, 2012. (*See generally* Dkt. # 24, Mot. to Compel.)

In the meantime, Shuffle Master also propounded interrogatories, requests for admission, and requests for production of documents upon LT Game. Shuffle Master hoped that in having to respond to written discovery, LT Game may finally explain the basis for this lawsuit. LT Game's answer (or lack thereof) came on November 30, 2012. It objected to Shuffle Master's discovery

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

because "***discovery is still in the early stages and Plaintiff's investigations regarding Plaintiff's claims are ongoing***," and simply directed Shuffle Master back to the vague allegations contained in its First Amended Complaint. (*See, e.g.*, Ex. 1, LT Game's Suppl. Answers to Shuffle Master's First Set of Interrog. Nos. 3-9 (emphasis added).

On January 24, 2013, Magistrate Foley heard Shuffle Master's Motion to Compel Initial Disclosures. Magistrate Foley immediately recognized that the problems with LT Game's initial disclosures stemmed from the problems with its pleadings. (*See* Dkt. #34, Order, 3 n. 1 (the Magistrate Judge noted that "Defendant previously filed a motion to dismiss Plaintiff's original complaint which was even less specific in its allegations.").) That is to say:

> [Shuffle Master's] motion to compel Plaintiff to provide more detailed Rule 26(a) disclosures arises, in part, from its argument that because the allegations of the First Amended Complaint are so vague, Plaintiff's equally vague disclosures of witnesses, documents and alleged damages leaves Defendant with little concrete information about the nature or substance of Plaintiff's allegations.

(*Id.* at 5:12-15.) The Magistrate Judge explained to LT Game that its pleading was so vague, he expected this Court to grant Shuffle Master's Motion to Dismiss the First Amended Complaint. (*See* Ex. 2, Hrg. Tr. dated Jan. 24, 2013, 17:3-7 (The Court: "I've looked at the original complaint and the amended complaint, and what I see there is you say: We've been disparaged by the defendants. You don't say what was said, you don't say where it was said, when it was said, and by whom it was said. Now, that's on the motion to dismiss.").)

In response, LT Game admitted it did not know much about anything it alleged in the Complaint and First Amended Complaint, but claimed that it could find those things out during discovery. As he put it to the Magistrate Judge:

> Now, what exactly was said to who? That's the subject of discovery, your Honor. That's not a requirement of pleading, we submit. It's – sometimes it's there, but we don't have – we don't have a little more detail, and that's why we need discovery."

(*See id.*, 20:8-12.) LT Game went on to explain:

> Yes, we do need more information about who said what when. We need to get into their e-mails we need to get into witnesses; both their witnesses and third party witnesses, your Honor.

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

(*Id.*, 31:4-7.) In one fell swoop, LT Game acknowledged that it had filed this lawsuit as a fishing expedition as Shuffle Master has contended all along. Ultimately, "the Court agree[d] that combined with the lack of specific factual allegations in the complaint, Plaintiff's initial disclosures lack[ed] sufficient information" and granted Shuffle Master's Motion to Compel. (Dkt. #34, Order, 5:20-22.)

**2. LT Game's Second Amended Complaint**

It is safe to say that once "the Magistrate Judge intimated that [LT Game's] First Amended Complaint may have been sparse on specific allegations," and thus would likely be dismissed by this Court, LT Game realized it needed to finally investigate its claims, although it was obligated to do long ago. (*See* Mot., 8:9-10.) Indeed, on the eve of the deadline for amending pleadings, LT Game sought leave to file the proposed Second Amended Complaint and subsequently filed this Motion. In its proposed pleading, LT Game names (for the first time) two Shuffle Master employees that LT Game alleges made misrepresentations regarding LT Game's products to current and prospective customers, alleges (for the first time) additional prospective and current customers the alleged misrepresentations were made to, and alleges (for the first time) some additional locations where the alleged misrepresentations took place. (*See* Prop. Sec. Am. Compl. ¶¶ 20-24.) It also inexplicably seeks to add (for the first time) one of its sister companies, LT Game (Canada), as a plaintiff.

But LT Game was not done there: it took the opportunity to lodge entirely new (and even more outrageous) allegations against Shuffle Master. First, LT Game alleges that Shuffle Master threatened LT Game with litigation back in 2009 and 2010 over patent infringement. (*See id.* ¶ 22.) And second, and more egregiously, LT Game alleges (in both its Motion and proposed Second Complaint) that Shuffle Master "has already been found guilty of deliberate patent rights violations by the criminal courts in Macau." (Mot., 8:20-22.) To be sure, both of LT Game's new allegations are utterly false and nothing short of misrepresentations to the Court. Shuffle Master

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

has not committed any crimes nor been found guilty of anything by any court. Such a misrepresentation is appalling and inexcusable.[2]

LT Game claims in its Motion that it "discovered [these] additional facts . . . since filing the First Amended Complaint." (*See* Mot., 8:11-13.) However, the truth is that LT Game did not look for the "facts" until January 24, 2013, when the Magistrate Judge warned LT Game that its First Amended Complaint would likely be dismissed. (*See* Ex. 2, Hrg. Tr. dated Jan. 24, 2013, 19:19-23.) Indeed, that is exactly what counsel for LT Game originally told counsel for Shuffle Master would happen – "if the Court grants your motion to dismiss, I guess we'll have to go back and better investigate our claims." (*See* Dkt. #24, Mot. to Compel, Ex. A, Miltenberger Decl. ¶ 13.) It is almost as if LT Game knew its pleading would be dismissed, and would eventually have to go back and figure out why it was suing Shuffle Master in the first place, something Rule 11 required ***before*** filing the lawsuit, not six months later.

In any case, during its recent investigation LT Game must have realized that there was no evidence to support its prior allegations and that it would have to come up with new allegations and change the entire scope and nature of the case to justify why it should not be dismissed. LT Game hopes that if it keeps fabricating smoke, the Court might actually believe there is a fire. There is neither. And LT Game must be held accountable not only for its lack of candor to this Court, but also its failure to investigate its claims before lodging them against Shuffle Master in this case.

## III. DISCUSSION

### A. Shuffle Master Has Never Been Found Guilty Of Patent Infringement.

Before addressing the many reasons why the Court should deny LT Game's Motion, it is important to address LT Game's offensive and reckless assertion that Shuffle Master "has already

---

[2] LT Game's baseless complaint for patent infringement is still pending in Macau and part of a separate litigation between different parties and based on different set of facts. That action is irrelevant to this action. Shuffle Master and its subsidiary, Shuffle Master Asia Limited, which is now known as SHFL entertainment (Asia) Limited ("SMA"), look forward to the day when Chun and his companies (including LT Game) can no longer make outrageous and despicable claims that Shuffle Master or its subsidiaries are infringing upon Chun's patents.

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

been found guilty of deliberate patent rights violations by the criminal courts in Macau." (*Id.*, 8:20-22.) To be perfectly clear, neither Shuffle Master nor any its subsidiaries has ever been found guilty of deliberate patent rights violations by the criminal courts in Macau. In fact, in that unrelated series of litigation between different parties, the Macau courts have previously found that there was insufficient evidence to support Chun's claims of patent infringement. The document attached to LT Game's Motion and proposed Second Amended Complaint does not change that fact. The document is nothing more than a statement of the accusations asserted against SMA. (*See* Ex. 1 to Prop. Sec. Am. Compl., ("The defendant is ***accused of***: . . .") (emphasis added).) It is in no way a finding or decision of guilt. Notably, the translation is not even accurate. LT Game must have believed that Shuffle Master and the Court would simply take its translation and explanation of the document without verification. LT Game was wrong in that regard. And it was even further mistaken to believe that it could misstate the nature of that irrelevant document to provide support for its misguided and defective pleading. Simply, LT Game's misrepresentation to the Court is offensive and violates Rule 11 as well as an attorney's duty of candor to the Court.

**B. <u>The Court Should Deny LT Game's Motion And Proposed Amendment.</u>**

Federal Rule of Civil Procedure 15(a) provides that "[a]fter a party has amended a pleading once as a matter of course, it may only amend further after obtaining leave of the court." The Rule prescribes a liberal policy for granting leave to amend, however, ***"[a] liberal policy does not mean the absence of all restraint. Were that the intention, leave of court would not be required."*** *Schick v. Finch*, 8 F.R.D. 639, 640 (S.D.N.Y. 1944) (emphasis added); *see also Jackson v. Bank of Hawaii*, 902 F.2d 1385 (9th Cir. 1990) ("Although the rule should be interpreted with 'extreme liberality,' ***leave to amend is not to be granted automatically***." (emphasis added)). As a result, the right to amend is "tempered" with considerations such as (1) undue delay; (2) bad faith or dilatory motives on the part of the movant; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; or (5) futility of the proposed amendment. *Grand Canal Shops II, LLC v. Iavarone*, 2:12-CV-00213-KJD, 2012 WL 6041643 (D. Nev. Dec. 4, 2012); *Foman v. Davis*, 371 U.S. 178,

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

182 (1962). Ultimately, "the allowance or refusal to permit amendment lies in the discretion of the district court." *Komie v. Buehler Corp.*, 449 F.2d 644, 647 (9th Cir. 1971). It is within this legal framework that the Court can and should deny LT Game's Motion.

***1. The Proposed Second Amended Complaint is the Result of Undue Delay.***

As a starting point, the Court should deny LT Game's proposed amendment simply based on its untimeliness. *See Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365-66 (10th Cir. 1993) ("It is well settled that untimeliness alone is a sufficient reason to deny leave to amend especially when the party filing the motion has no adequate explanation for the delay."). LT Game filed this action on July 10, 2012, with nothing more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that are completely insufficient under any standard of pleading. *See Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). LT Game's First Amended Complaint was no better. According to LT Game, it had no obligation to investigate its claims or provide Shuffle Master for their basis. (*See* Dkt. #24, Mot. to Compel, Ex. A, Miltenberger Decl. ¶ 13; Ex. 1, LT Game's Suppl. Answers to Shuffle Master's First Set of Interr. Nos. 3-9 (LT Game refusing to explain the basis for its claims because "discovery is still in the early stages and Plaintiff's investigations regarding Plaintiff's claims are ongoing").) This is just one more instance where LT Game is wrong on the law.

Of course, a party is required to fully investigate its claims ***before*** filing them in federal court. *See Ellis v. Beemiller, Inc.*, 287 F.R.D. 326, *2 (W.D. Pa. Nov. 19, 2012) ("Rule 11 imposes upon attorneys an affirmative duty to conduct a reasonable investigation into the facts of a claim both prior to filing suit and thereafter in order to ensure that the assertions contained in each paper submission are made with reasonable belief that they are well-grounded in fact.") Thus, in assessing the timeliness of a request to amend, a court must "not merely ask whether a motion was filed within the period of time allotted by the district court in a Rule 16 scheduling order. Rather, in evaluating undue delay, [the court must] also inquire whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006)

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

***"Where the party seeking amendment knows or should know of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend may be denied."*** *E.E.O.C. v. Boeing Co.*, 843 F.2d 1213, 1222 (9th Cir. 1988); *Jackson v. Bank of Hawaii,* 902 F.2d 1388 (9th Cir. 1990) ("Relevant to evaluating the delay issue is whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading."); *see also Chitimacha Tribe of Louisiana v. Harry L. Laws Co., Inc.*, 690 F.2d 1157, 1163 (5th Cir. 1982) ("When there has been an apparent lack of diligence, the burden shifts to the movant to prove that the delay was due to excusable neglect.").

Based on the history of this case and LT Game's prior statements to Shuffle Master and this Court, there is no question that it failed to investigate its claims prior to asserting them in this case. The question becomes, then, whether LT Game "knew or should have known" these "newly discovered facts" prior to January 31, 2013, when it moved the Court for leave to file the proposed Second Amended Complaint. The answer is a resounding "yes." LT Game should have known the "who, what, where, when, and how" behind its claims for intentional misrepresentation before filing them. *See Ryan v. Rexworks, Inc.*, CIV 06-5866 (NLH), 2008 WL 4066363, *3 (D.N.J. Aug. 26, 2008) ("[P]laintiffs have an obligation to diligently investigate and determine the identity of potentially liable parties prior to the filing of the initial complaint."). In fact, these are things that LT Game should have included in its original Complaint back on July 31, 2012. *See Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1102–06 (9th Cir. 2003) (requiring a party to plead claims that "sound in fraud" with particularity). LT Game has no excuse for either failure.

Moreover, LT Game has unquestionably known about the majority of the "newly discovered facts" for almost four years. That is, LT Game alleges that in May of 2009 and April of 2011, an employee of Shuffle Master, "among other threats, threatened Plaintiffs with litigation, if they did not transfer their intellectual property rights into a patent pool for Defendant to use at no cost." (Prop. Sec. Am. Compl. ¶ 13.) If an employee of Shuffle Master threatened LT Game back in May of 2009 and April of 2011 (which certainly did not happen), LT Game would have known about such conduct when it filed its Complaint in July 2012. For some reason, however, that manufactured allegation never made it into a pleading, until now.

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

Even if this Court were to take LT Game's ridiculous allegations as true, as admittedly it must, the fact remains that LT Game either knew or should have known about all of the "newly discovered facts" before filing its Complaint on July 10, 2012 and its First Amended Complaint on August 17, 2012 – not to mention when it responded to Shuffle Master's written discovery on November 30, 2012. Instead, LT Game strategically stuck its head in the ground for months and represented to Shuffle Master (and this Court) that it had disclosed everything it knew. That was obviously false and the Federal Rules of Civil Procedure require much more. The Court should deny LT Game's Motion for the simple fact that it knew or should have known all of the "newly discovered facts" prior to filing this lawsuit, instead of wasting Shuffle Master and the Court's time and resources over the last six months in discovery.

**2. *LT Game's Bad Faith and Dilatory Motives Warrant Denial of the Motion.***

LT Game's bad faith and dilatory motives also support denial of its Motion and proposed Second Amended Complaint. Surely LT Game knew that it had to investigate its claims prior to filing them in a complaint with this Court – but it chose not to do so. This was by design, not mistake. LT Game believed that if it could plead overly vague allegations, it could justify overly broad and abusive discovery encompassing Shuffle Master's operations and customers throughout the world. (Dkt. #20, LT Game's Prop. Disc. Plan and Sched. Order, 3:15-16 ("Subjects on which discovery may be needed: All issues and allegations as set forth in the First Amended Complaint."); 2:12-18 ("This case involves unfair competition and tortious interference with business and contractual claims related to Defendant's unlawful actions in international commerce and international trade shows, including, but not limited to, to Defendant's unlawful actions in Macau and Australia."); Ex. 2, Hrg. Tr. dated Jan. 24, 2013, 31:4-7 ("Yes, we do need more information about who said what when. We need to get into their e-mails we need to get into witnesses; both their witnesses and third party witnesses, your Honor.")) Indeed, LT Game strategically chose not to investigate its claims because it did not want to limit the scope of its discovery (harassment) in this case.

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

Also important is the timing of LT Game's "discovery" of these "new facts." LT Game did not discover them while trying in good faith to respond to Shuffle Master's written discovery. No, LT Game admittedly only removed the blinders after "the Magistrate Judge intimated that [LT Game's] First Amended Complaint may have been sparse on specific allegations," and thus would likely be dismissed by this Court. (*See* Mot., 8:9-10.) And this is exactly what counsel for LT Game told Shuffle Master would happen. He admitted that if and when this Court granted Shuffle Master's Motion to Dismiss, he and his client would have to go back and look for more information about its claims after the fact. (*See* Dkt. #24, Mot. to Compel, Ex. A, Miltenberger Decl. ¶ 13.) By its own words, LT Game was only going to comply with its pleading and discovery requirements ***if*** this Court threatened to dismiss this action, which is the epitome of bad faith. LT Game has no excuse otherwise.

***3. LT Game's Amendments Would Severely Prejudice Shuffle Master.***

It goes without saying that "[p]rejudice to the opposing party is the most important factor." *Jackson,* 902 F.2d at 1387. And, given the above, it should also go without saying that granting LT Game's Motion would severely prejudice Shuffle Master in this case.

Incredibly, LT Game claims that granting the Motion would cause no prejudice to Shuffle Master because "the parties are in the infancy of discovery in this case." (Mot., 7:11-12.) Not so. Although LT Game may be in the infancy of its discovery, Shuffle Master has already propounded and received responses to written discovery from LT Game and spend valuable time and resources attempting to evaluate the amorphous basis of LT Game's allegations. Shuffle Master has been forced to accept LT Game's claim that it has no additional information, and has developed a strategy for defending this case based on that claim. LT Game should not be allowed to change its mind and tell Shuffle Master it now wants to disclose allegations it should have known long ago and change the entire scope of this litigation. By the same token, Shuffle Master should not have to effectively reissue discovery propounded in this case simply because LT Game now claims to have "discovered additional facts" related to its claims in this case and finally decided what it wants to serve as the basis for its lawsuit. LT Game had its chance to provide support for its claims. It chose not to do so, and it should be bound by that decision.

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

Moreover, LT Game's assertion ignores the procedural history of this case. Shuffle Master has been conducting meet and confers and filing motions to get LT Game to comply with its pleading and discovery obligations in this case. All of that time and money would be wasted if LT Game were allowed to come in now and file what is the equivalent of a new lawsuit. Indeed, Shuffle Master now has a new plaintiff asserting new claims against it. Shuffle Master will have to conduct all new discovery related to LT Game (Canada) and its claims, as well as reissue written discovery to LT Game to account for the "newly discovered facts" and changed scope of the lawsuit. LT Game certainly knew of the existence of this new entity and any purported basis to assert claims on its behalf from the inception of the lawsuit, but apparently chose not to allege them for some unknown strategic purpose which does nothing but prejudice Shuffle Master and the discovery it has already completed. On the other hand, the proposed changes will have little to no effect on LT Game because it has only produced a handful of documents and can simply "supplement" its prior responses to Shuffle Master's discovery.

Despite what LT Game tells this Court in its Motion, Shuffle Master had no notice of this new party and its new claims. Shuffle Master was never given notice of LT Game's claims, let alone those of another foreign entity called LT Game (Canada). To that end, LT Game did not even identify LT Game (Canada) as an interested party pursuant to Rule 7.1, and yet it tells this Court that Shuffle Master knew all along that LT Game (Canada) may come into this case. (*See* Dkt. #10, Notice of Interested Parties (LT Game certifying "that there are no known interested parties other than those named in the caption").) Nonsense. This is just another example of LT Game not doing its due diligence (or even knowing the existence of an affiliated, potential plaintiff) before filing this lawsuit.

LT Game's insufficient pleading and failure to participate in discovery have already prejudiced Shuffle Master's ability to defend itself in this action. Granting it leave to file yet another deficient pleading would only compound the prejudice. Remember, it was LT Game that chose not to investigate its claims (as it was required to do) prior to filing this nonsensical lawsuit. Shuffle Master should not have to bear the burden for LT Game's negligence.

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

### 4. *LT Game has Repeatedly Failed to Cure Deficiencies in its Pleadings.*

Again, LT Game has already had two opportunities to make a proper pleading, and has failed on both accounts. The proposed Second Amended Complaint is no different. As Shuffle Master first pointed out on July 31, 2012, and then again on September 4, 2012, LT Game must plead "the who, what, when, where, and how" behind its claims of intentional misrepresentation. *Vess*, 317 F.3d at 1106 (citations omitted). Moreover, it "must set forth what is false or misleading about a statement, and why it is false." *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994). A claim for misrepresentation must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

LT Game still has not met these threshold pleading requirements with its third attempt. Although the proposed Second Amended Complaint offers a few more details about the circumstances behind Shuffle Master's alleged misrepresentations, LT Game has not set forth what Shuffle Master allegedly said to its current and prospective customers, and explained why Shuffle Master's statements were false or misleading. Moreover, LT Game must also establish that Shuffle Master's alleged misrepresentations are even actionable. As the Fifth Circuit explained in *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489 (5th Cir. 2000):

> Essential to any claim under section 43(a) of the Lanham Act is a determination of whether the challenged statement is one of fact – actionable under section 43(a) – or one of general opinion – not actionable under section 43(a). Bald assertions of superiority or general statements of opinion cannot form the basis of Lanham Act liability. Rather the statements at issue must be a specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact. ... A statement of fact is one that (1) admits of being adjudged true or false in a way that (2) admits of empirical verification.

*Id.* at 495–96 (internal citations and quotations omitted); *see also Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) (stating that in order to constitute a statement of fact, a statement must make "a specific and measurable advertisement claim of product superiority").

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

Indeed, "[o]ne form of non-actionable statements of general opinion under section 43(a) of the Lanham Act has been referred to as 'puffery.'" *Id.* at 496. The Third Circuit has described "puffing" as "advertising that is not deceptive for no one would rely on its exaggerated claims." *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia,* 898 F.2d 914 (3d Cir.1990). Similarly, the Ninth Circuit has defined "puffing" as "exaggerated advertising, blustering and boasting upon which no reasonable buyer would rely and is not actionable under 43(a)." *Southland Sod Farms,* 108 F.3d at 1145 (quoting 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 27.04(4)(d) (3d ed. 1994). Non-actionable "puffery" also includes "product superiority claims that are vague or highly subjective." *Id.*

In this case, and even with the proposed Second Amended Complaint, LT Game has not come close to pleading sufficient facts to make a *prima facie* showing that its claims against Shuffle Master are actionable. Although LT Game claims that Shuffle Master made some undescribed misrepresentations "regarding Plaintiffs, their commercial activities, intellectual property, and/or their products and services," (Prop. Sec. Am. Compl. ¶ 20), the lone allegation does not allow Shuffle Master or the Court to determine whether the alleged statements are actionable statements of fact, or non-actionable statements of general opinion – *i.e.,* puffery. Again, this was all explained to LT Game as early as July 31, 2012, and yet LT Game refuses to fix the deficiencies in its pleadings. The Court should deny LT Game's Motion, thereby saving Shuffle Master from having to file a third motion to dismiss.

### *5. LT Game's Amendment is Futile and Must be Denied.*

Similarly, the most important reason why the Court should deny the Motion is because of its downright futility. That is, even if the Court were to grant LT Game's Motion and allow the proposed Second Amended Complaint to become the operative complaint, LT Game has still failed to state a claim upon which relief may be granted. *See Miller v. Rykoff-Sexton, Inc.,* 845 F.2d 209, 214 (9th Cir. 1988) ("The test for futility is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)."). Indeed, "where the proposed amendment is insufficient in law and would thus be a useless act, it is proper, at least in this Circuit, to deny leave to amend." *Gilbertson v. City of Fairbanks,* 262 F.2d 734, 740 (9th Cir.

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

1959); *see also Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 546 (5th Cir. 1980) ("Leave to amend need not be given if a complaint, as amended, is subject to dismissal"). "Futility alone can justify the denial of a motion to amend." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004).

In addition to the pleading deficiencies identified above, granting the Motion is futile because neither LT Game nor the proposed, new plaintiff LT Game (Canada) have standing to maintain this action. Neither was registered to do business the United States or Nevada until late last year, after LT Game filed this action here in Nevada. (Ex. 3, LT Game's Suppl. Answers to Shuffle Master's Req. for Adm. Nos. 10-11; Mot., 4 n. 2.) And neither is currently licensed to sell or distribute gaming devices or associated equipment in the State of Nevada, or obtained the necessary approvals to do so. (*Id.*, Nos. 12-14 (Plaintiff admitting it is not licensed to sell or distribute gaming devices or associated equipment in the State of Nevada, "but is in the application process.").)[3] Thus, not only are the Proposed Plaintiffs unable to demonstrate damages in this case (as none have occurred to date as a matter of law), they may never be able to prove damages unless and until they become licensed as a gaming distributor by the Nevada Gaming Commission. *See* NRS 463.650 ("[I]t is unlawful for any person . . . to operate, carry on, conduct or maintain any form of manufacture, selling or distribution of any gaming device . . . without first procuring and maintaining all required federal, state, county and municipal licenses.").

They have suffered no "injury in fact," and therefore have no standing in this case. *See Henry v. Circus Circus Casinos, Inc.*, 223 F.R.D. 541, 543 (D. Nev. 2004) ("To establish standing under Article III of the United States Constitution, a plaintiff must show: '(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable

---

[3] According to Paradise Entertainment Corporation's 2011 Annual Report, LT Game (Canada) is an "inactive" entity. (Ex. 4, SHFL000088 (excerpt from 2011 Annual Report)).

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

decision.") (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)).

The case of *Joint Stock Society v. UDV N. Amer., Inc.*, 266 F.3d 164, 177 (3d Cir. 2001) is illustrative. In that case, a plaintiff brought suit against the defendant for allegedly making misrepresentations about the origin of its products. The plaintiff claimed that because of the defendant's misrepresentations, it was precluded from entering into the United States market and otherwise competing with the defendant's products. The Third Circuit ultimately found that "the plaintiff's putative injuries, when characterized in this manner, do not suffice for Article III standing." *Id.* at 176. The plaintiffs "ha[d] failed to create a genuine issue that they ha[d] suffered an injury in fact for the simple reason that the plaintiffs have never marketed any vodka in the United States and have not adduced any evidence establishing that they are prepared at this time to sell any vodka in this country." *Id.* Thus, "[t]he defendant's allegedly false advertising cannot have harmed plaintiffs by channeling their customers toward [its products] when plaintiff have not even begun offering their product for sale in the United States." *Id.*

All but conceding the above, LT Game asserts that it still has standing as an "exclusive licensee" to assert damages on behalf of its parent company, LT Game Ltd. (*See* Ex. 5, LT Game's Answers to Shuffle Master's Req. for Adm. Nos. 15-23 (LT Game claiming damages "based on its business relationship with its licensor"); *see also* Ex. 3, LT Game's Suppl. Answers to Shuffle Master's Req. for Adm. Nos. 21-23 (LT Game seeking damages on behalf of its "licensor").) Even LT Game's backup plan, however, falls flat. Even if LT Game were the "exclusive licensee" of LT Game Ltd. in Nevada, as it claims, LT Game Ltd. itself is not licensed to sell or distribute gaming devices in this state. Thus, even if LT Game were to rely upon "its business relationship with its licensor" to allege claims on behalf of its licensor LT Game Ltd., those claims still fail because neither company has sustained and likely will sustain damages as a result of the alleged misrepresentations. Any way LT Game spins it this case must be dismissed, and it futile for LT Game to amend its First Amended Complaint when the end result (dismissal) is the same.

## IV. CONCLUSION

LT Game's Motion should be denied both for what it says, and for what it does not say. LT Game's proposed Second Amended Complaint contains the same, fatal defects as its prior pleadings. Most notably, LT Game still cannot explain what Shuffle Master allegedly said, or allege facts as to why those representations were false and misleading. However, when the Court looks beyond the glaring defects in the proposed pleading, it becomes clear that this entire exercise is the result of LT Game's strategic decision not to investigate its claims before filing them against Shuffle Master. LT Game is using (more accurately, abusing) this Court's patience as well as the Federal Rules of Civil Procedure to further its own gamesmanship and harassment. The Court should stop LT Game once and deny the Motion.

DATED this 19th day of February, 2013.

PISANELLI BICE PLLC

By: ______________________
James J. Pisanelli, Esq., Bar No. 4027
Christopher R. Miltenberger, Bar No. 10153
Eric T. Aldrian, Esq., Bar No. 11897
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169

Attorneys for SHFL entertainment, Inc. f/k/a Shuffle Master, Inc.

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169