1
2
3
4
5
6
7                          **UNITED STATES DISTRICT COURT**
8                               **DISTRICT OF NEVADA**
9
10   LT International Ltd.,                         Case No.: 2:12-cv-1216-JAD-GWF
11              Plaintiff,                   **Order Granting in Part and Denying in**
                                             **Part Defendant Shuffle Master's**
12                 v.                        **Motion to Dismiss [Doc. 17] and**
                                             **Plaintiff LT Game International Ltd.'s**
13   Shuffle Master, Inc.,                   **Motion for Leave to File Second**
                                             **Amended Complaint [Doc. 37]**
14              Defendant.
15
16
17          In this international, unfair competition case, the Court must determine whether the plaintiff

18   gaming-technology company's five-page complaint sufficiently states claims for unfair competition

19   under state, federal, and Macao law, and claims for tortious interference with existing and prospective

20   business relationships and, if not, whether leave to amend should be allowed.  Because plaintiff's factual

21   allegations sound in fraud but do not satisfy Rule 9's heightened pleading standard, the Court finds that

22   all claims save one must be dismissed for inadequacy.  The Court will, however, allow limited

23   amendment to cure these factual deficiencies.

24
25
26
27
28

                                             1

**Background**[1]

LT International, Ltd. ("LT") is a Canadian corporation authorized to do business in the State of Nevada. Doc. 14 at 1.[2] The company claims to market and sell gaming technology and services both in North America and international markets, including Macao. *Id.* at 2. Among the products LT is licensed to market and sell is a "Live Multi-Table System," an electronic interface that allows gamblers at a casino table to simultaneously place bets at other tables. *See id.* at 3.

Shuffle Master, Inc. is a direct competitor of LT. *Id.* LT alleges that in the year preceding the filing of its Complaint, Shuffle Master began "an international campaign of disparagement of [LT's] business and its products and services." *Id.* According to LT, Shuffle Master has, *inter alia*, wilfully misrepresented the quality of LT's products and services, including the Live Multi-Table System, to customers both in Nevada and Macao, damaging LT's business, both current and prospective. *Id.*

By its five-page, already once-amended complaint,[3] LT sues Shuffle Master for (1) Unfair Competition under the Lanham Act, 15 U.S.C. § 1051 *et seq.*; (2) Unfair Competition under Nevada common law; (3) Unfair Competition under the Macau Commercial Code; and (4) Tortious Interference with Current and Prospective Business and Contractual Relations. Doc. 14 at 3-4. LT prays for an order enjoining Shuffle Master from making false representations about LT's products "to the public, the gaming and casino industry, and any current or prospect[ive] customer," or "unfairly competing with [LT] in any manner." *Id.* at 5. LT also seeks legal relief, including a disgorgement of Shuffle Master's profits; the damages LT sustained as a result of Shuffle Master's actions; attorney's fees and costs; and statutory damages under the Lanham Act. *Id.*

Shuffle Master moves this Court to dismiss all of LT's claims, arguing that the thin allegations in this five-page complaint alleging claims grounded in fraud are insufficient to state a cognizable claim for relief under FRCP 8, 9, and 12(b)(6). Doc. 17. Shuffle Master further urges dismissal of LT's

---

[1] This description is intended only for general background and is not intended as any finding of fact.

[2] LT originally filed this action on July 10, 2012, Doc. 1, and then duly amended its complaint on August 17, 2012. Doc. 14.

[3] The Amended Complaint was filed as of right in response to Shuffle Master's first motion to dismiss, which was then denied as moot. Doc. 44

1   tortious-interference claim on the grounds that any contract that may be the subject of that claim would

2   be illegal and thus unenforceable because LT has not received the license necessary to sell or distribute

3   gaming devices in Nevada.  *Id*. at 12.  LT opposes the motion, contending that its claims do not sound

4   in fraud and thus require only notice pleading under Rule 8, which LT's allegations satisfy.  Doc. 19.

5   Nevertheless, should this Court find its allegations insufficient, LT should be granted leave to cure any

6   deficiencies because this litigation remains in its infancy.  *Id*. at 9.

7        In addition to its request for leave to cure deficiencies in its factual allegations, Doc. 19, LT also

8   asks for leave to file a second amended complaint to add a new party (LT Game Canada) as a plaintiff

9   because LT Game Canada is the true plaintiff for all claims arising before LT's formation in 2011.  Doc.

10  37.  Shuffle Master opposes this motion, contending that the proposed new version of the complaint still

11  falls short of the specificity required by the rules, that LT acted in bad faith by sandbagging with this

12  new party on the last day for amendment, and if LT Game Canada is the true real party in interest, the

13  LT entities should have known that from the inception of this case.  Doc. 42.

14       The Court finds both motions appropriate for disposition without oral argument.  L.R. 78-2.  For

15  the reasons set forth below, both motions are granted in part and denied in part.

16                                    **Discussion**

17  **A.    Motion to Dismiss**

18       Federal Rule of Civil Procedure 8(a) provides the basic standard for federal pleadings:  "A

19  pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the

20  court's jurisdiction . . . .; (2) a short and plain statement of the claim showing that the pleader is entitled

21  to relief; and (3) a demand for the relief sought."  The United States Supreme Court fleshed out that

22  standard and its relationship to FRCP 12(b)(6) in *Ashcroft v. Iqbal* and *Bell Atlantic Corp. v. Twombly*.

23  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,

24  to state a claim for relief that is plausible on its face."[4]  "[A] plaintiff's obligation to provide the

25  'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic

26  recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise

27

28       [4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

3

1    a right to relief above the speculative level."[5]  The Court is also "not bound to accept as true a legal

2    conclusion couched as a factual allegation."[6]

3         A complaint is subject to deeper scrutiny when it contains allegations of fraud or mistake.  Rule

4    9 of the Federal Rules of Civil Procedure requires a party to "state with particularity the circumstances

5    constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may

6    be alleged generally."[7]  Rule 9's "particularity" standard requires a plaintiff to "identify the who, what,

7    when, where, and how of the misconduct charged, as well as what is false or misleading about the

8    purportedly fraudulent statement, and why it is false."[8]  This increased detail is required "to give

9    defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that

10   they can defend against the charge and not just deny that they have done anything wrong."[9]  Thus,

11   claims grounded in fraud or mistake must meet both the "plausibility" standard of Rule 8(a) and the

12   "particularity" standard of Rule 9(b),[10] ensuring they meet "Rule 8's requirement of simplicity,

13   directness, and clarity," which "has among its purposes the avoidance of unnecessary discovery."[11]

14        **1.      Lanham Act Claim**

15        LT's First Amended Complaint gestures to the "Lanham Act" and "unfair competition" without

16   specifying the specific legal basis for this theory.  *See* Doc. 14 at 3-4.  From the sparse facts of LT's

17   First Amended Complaint and its references in its opposition to the motion to dismiss, the Court

18   concludes that LT relies on the Lanham Act's false advertising provision, 15 U.S.C. § 1125(a)(1)(B),

19   as the sole basis for its Lanham Act false advertising claim.  To prove that claim, the plaintiff must

20   establish: (1) a false statement of fact was made by the defendant in a commercial advertisement about

21

22        [5] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

23        [6] *Id.* (quoting *Papsan v. Allain*, 478 U.S. 265, 286 (1986)).

24        [7] Fed. R. Civ. Proc. 9(b).

25        [8] *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010).

26        [9] *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

27        [10] *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011);
     *WPP Luxembourg Gamma Three Sarl v. Spot Runnier, Inc.*, 655 F.3d 1039, 1047 (9th Cir. 2011).

28        [11] *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996).

its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.[12]

Shuffle Master contends that LT's Lanham Act claim should be evaluated under Rule 9(b)'s particularity standard because the allegations that support it are fraudulent in nature. Doc. 17 at 4-8. LT's allegations fail Rule 9's more demanding particularity standard, Shuffle Master contends, requiring dismissal of this claim. *Id.* LT challenges the notion that its allegations must be evaluated under the heightened Rule 9 standard merely because LT characterized Shuffle Master's intentional conduct as a "misrepresentation." Doc. 19 at 2-3.

### a.     The Lanham Act claim is grounded in fraud.

Neither fraud nor mistake is an element of a Lanham Act false advertising claim. To be actionable under this statute, the statement need only be "false" and result in "deception."[13] Thus, nothing in the elements of a Lanham Act false advertising claim themselves triggers Rule 9's heightened pleading standard.

But that's not the end of the analysis. In the Ninth Circuit, there is more than one way to trigger Rule 9. The language penned in a complaint when pleading a claim for which fraud is not an essential element may garner Rule 9 scrutiny:

> In cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be "grounded in fraud" or to "sound in fraud," and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b).[14]

---

[12] *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

[13] *Id.*

[14] *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003).

LT's contention that its claim cannot qualify as grounded in fraud merely by its use of the word "misrepresentation" is without merit because "[i]t is well settled in the Ninth Circuit that misrepresentation claims are a species of fraud, which must meet Rule 9(b)'s particularity requirement."[15]    Many courts analyzing Lanham Act claims alleging "misleading and false representations" by a business competitor have concluded that the Rule 9(b) standard nonetheless applied because the complaint was grounded in fraud.[16]

In *Vess v. Ciba-Geigy Corp. USA*,[17] the Ninth Circuit articulated the proper, bifurcated procedure for a district court to employ when testing the sufficiency of a claim for which fraud is not an essential element but fraudulent conduct is nevertheless alleged.  Only the fraudulent-conduct allegations must satisfy Rule 9; the others "need satisfy only the ordinary notice pleading standards of Rule 8(a)."[18]  "If particular averments of fraud are insufficiently pled under Rule 9(b), a district court should 'disregard' those averments, or 'strip' them from the claim.  The court should then examine the allegations that remain to determine whether they state a claim."[19]

---

[15] *Meridian Product Systems, Inc. v. Hardin Construction Co., LLC*, 404 F. Supp. 2d 1214, 1219 (E.D. Cal. 2005); *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 848-49 (N.D. Cal. 2012); *Settle v. World Savings Bank, F.S.B.*, 2012 WL 1026103, at *5 (C.D. Cal. Jan. 11, 2012); *see also Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) (noting that claims for fraud and "negligent misrepresentation" must both meet Rule 9(b)'s heightened particularity requirement); *Martinez v. Creative Concepts, Inc.*, 2012 WL 4490946, at *3 (D. Nev. Sept. 27, 2012) (citing *Meridian* in RICO action); *Smallwood v. NCsoft Corp.*, 730 F. Supp. 2d 1213, 1230 (D. Hawai'i 2010); *ThermoLife International, LLC v. Gaspari Nutrition, Inc.*, 2011 WL 6296833, at *4-*5 (D. Ariz. Dec. 16, 2011); *In re Washington Mutual, Inc. Securities, Derivative & ERISA Litigation*, 2010 WL 1734848, at *3 (W.D. Wash. Apr. 28, 2010).

[16] *See, e.g.*, *TransFresh Corp. v. Ganzerla & Associates, Inc.*, 862 F. Supp. 2d 1009, 1017-18 (N.D. Cal. 2012); *Pstube Systems, Inc. v. HomeTeam Pest Defense, LLC*, 2006 WL 1441014, at *4-*5 (D. Ariz. May 2, 2006).  Indeed, it is likely that most false advertising claims under § 1125(a)(1)(B) will trigger Rule 9(b) scrutiny because the first prong of the standard requires alleging that the defendant made a "false" statement and, thus, the plaintiff will allege either that a "false" representation was made with the intent to deceive (fraud), or that the false representation was made unwittingly, without the intent to deceive (mistake).

[17] 317 F.3d at 1105.

[18] *Id.* at 1105.

[19] *Id.*

6

1           **b.**      **LT's fraud-based allegations do not satisfy Rule 9.**

2        The Court begins by evaluating whether LT's misrepresentation allegations that support this

3 claim satisfy Rule 9. The claim itself consists of just three paragraphs: a repetition and reallegation of

4 all prior paragraphs, the conclusory statement that "Defendant's aforesaid activities constitute unfair

5 competition under the federal Lanham Act," and the assertion that those activities "have damaged and

6 caused, and are damaging and causing, irreparable harm to the Plaintiff." Doc. 14 at 3-4. As these bare-

7 bones in-count allegations offer nothing of substance, the Court first examines the realleged prior

8 paragraphs, which include:

9                  12. Over the past year, Defendant has begun an international campaign
10                 of disparagement of Plaintiff's business and its products and services and
                 has directly and indirectly interfered with Plaintiff's business and
11                 potential business activities, dealings and contracts with customers in the
                 United States and in Las Vegas, Nevada.

12                  13. Defendant has made misrepresentations regarding Plaintiff's business
                 and products, including Plaintiff's LT Game Live Multi-Table System,
13                 at international trade shows, including at the G2E gaming trade show in
                 May, 2012 in Macau, and directly and indirectly to Plaintiff's current and
14                 prospective customers in the gaming and casino industry.

15                  14. Defendant's misrepresentations include, but are not limited to,
16                 misrepresentations regarding the nature and quality of Plaintiff's services
                 and products, including but not limited to, Plaintiff's LT Game Live
17                 Multi-Table System.

18                  15. Defendant's aforementioned unlawful conduct, including
                 misrepresentations to Plaintiff's customers and potential customers,
19                 including but not limited to, the Las Vegas Sand Corporation and The
                 Venetian, located in Las Vegas, Nevada, have taken place in Macau, in
20                 the United States, and in Las Vegas, Nevada, among other places.

21                  16. Defendant's misrepresentations have undermined and negatively
                 impacted Plaintiff's business, current and prospective deals and
22                 contracts, including but not limited to, lost opportunity, scope of
                 commitments, terms and value.

23                  17. Defendant is engaging in this course of action willfully and with full
                 knowledge and intent to interfere and damage Plaintiff's business deals
24                 with its current and prospect customers.

25 Doc. 14 at 2-3. Paragraphs 13-16 rely entirely on misrepresentations—a species of fraud—so LT was

26 required to "identify the who, what, when, where, and how of the misconduct charged, as well as what

27

28

1    is false or misleading about the purportedly fraudulent statement, and why it is false."[20]  The absence

2    of even one of these identifiers justifies dismissal.[21]

3         LT's factual allegations in paragraphs 13, 14, 15, and 16 do not satisfy Rule 9(b).  Paragraph 13

4    gestures broadly towards the "who," in that "Defendant" made the misrepresentations, and satisfies the

5    "where" and "when" criteria by claiming that these misrepresentations occurred at, *inter alia*, the "G2E

6    trade show in May, 2012."  Doc. 14 at 3.[22]  The "what" is arguably satisfied in paragraph 14, which

7    alleges that the misrepresentations pertained to the "LT Game Live Multi-Table System."  *Id.*  But LT

8    fails to offer the information to fill in the rest of the blanks.  There is no indication of "how" the alleged

9    statements were made (i.e., orally, by email, in a letter, on a Post-it).  More importantly, LT provides

10   no insight into the factual content of any statement, despite its burden to allege with particularity "what

11   is false or misleading about the purportedly fraudulent statement, and why it is false."[23]  Despite having

12   already once amended its complaint, LT still fails to sufficiently plead Lanham Act misrepresentation

13   facts that satisfy Rule 9.  The Court therefore strips away these allegations and looks exclusively to the

14   remaining (non-fraud) allegations to determine whether they satisfy Rule 8 and save this claim from

15   dismissal.

16                    **c.    LT's non-fraud-based allegations fail to state a Lanham Act claim.**

17        Denuded of its fraud-related allegations, this claim consists of just two paragraphs:

18            12. Over the past year, Defendant has begun an international campaign
19            of disparagement of Plaintiff's business and its products and services and
             has directly and indirectly interfered with Plaintiff's business and
             potential business activities, dealings and contracts with customers in the
20           United States and in Las Vegas, Nevada.

21            17. Defendant is engaging in this course of action willfully and with full
             knowledge and intent to interfere and damage Plaintiff's business deals
22           with its current and prospect customers.

23   Doc. 14 at 2-3.  These allegations are little more than "a formulaic recitation of the elements of a cause

24        [20] *Ebeid*, 616 F.3d at 998.

25        [21] *See, e.g.*, *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (finding that for allegations
26   grounded in fraud, plaintiff was obligated to specify the time, place, and content of the alleged statements).

27        [22] To the degree the alleged misrepresentation is "not limited to" the system or the specified
     customers, LT's allegations are ignored as this vague gesture to the "rest of the world" fails the Rule 9(b) test.

28        [23] *Ebeid*, 616 F.3d at 998.

                                                            8

1  of action," which the Court is not obligated to accept as true.[24]  They do not state a plausible claim of

2  relief even under Rule 8's standard.  Shuffle Master's Motion to Dismiss LT's Lanham Act claim is

3  granted.

### 2.    Nevada Unfair Competition Claim

5        The Ninth Circuit has acknowledged that "the tort of unfair competition is extremely broad" in

6  Nevada.[25]  But this claim still must be analyzed under federal pleading standards because "Rule 9(b)'s

7  particularity requirement applies to state-law causes of action."[26]  Thus, the Court must again determine

8  whether LT's own allegations merit review under Rule 8 or 9.

9        For its Nevada unfair competition claim, LT again "repeats each and every allegation" from its

10 general statement of facts and then alleges summarily that "Defendant's aforesaid activities constitute

11 unfair competition under the State of Nevada's common law" and "have damaged and have caused, and

12 are damaging and causing, irreparable harm to the Plaintiff."  Doc. 14 at 4.  Since LT relies on the same

13 set of factual allegations for its state-law unfair competition claim as it does for its Lanham Act claim,

14 the Court's analysis first "strips away" the inadequately pled, fraud-based paragraphs, *see supra*, leaving

15 only paragraphs 12 and 17, which are, again, just "a formulaic recitation of the elements of a cause of

16 action," and the Court is not obligated to accept them as true.[27]  Even under the broad state-law standard,

17 these threadbare allegations do not state a cognizable claim for relief.  Shuffle Master's request to

18 dismiss this claim is granted.

### 3.    Macao Unfair Competition Claim

20       Shuffle Master next argues that LT's claim for violation of Macao's unfair competition law also

21 "sounds in fraud" and thus suffers from the same fatal defects as the previous claims.  LT again directs

22 the Court back to paragraphs 13-15 to search for the facts LT contends support this claim to Rule 9's

---

24 [24] *See Twombly*, 550 U.S. at 555.

25 [25] *Golden Nugget, Inc. v. American Stock Exchange, Inc.*, 828 F.2d 586, 591 (9th Cir. 1987).

26 [26] *Vess*, 317 F.3d at 1102.  For example, Rule 9(b) has been applied to claims of negligent
   misrepresentation brought under Nevada law, even though the law itself does not mention fraud, because such
27 a state of mind is an "essential element" of the claim.  *Scaffidi v. United Nissan*, 425 F. Supp. 2d 1159, 1170
   (D. Nev. 2005) (citing *Vess*).

28 [27] *See Twombly*, 550 U.S. at 555.

1   standards.  The Court returns from that search empty handed, for these allegations have not been

2   rendered more substantial by their third reallegation.

3       LT also attaches to its pleading approximately 25 pages of what it purports is a section of

4   Macao's commercial code, translated from Portugese into English.  Doc. 14-1.  LT includes no affidavit

5   or other proof that this is an accurate, professionally performed translation.  Even assuming the veracity

6   and reliability of this document, LT has triggered Rule 9 by basing this claim on fraud-based allegations

7   whether or not fraud is an essential element of an unfair competition claim under Macao law.  Again,

8   LT's allegations fall short of Rule 9's standard, warranting the dismissal of this claim.

9

10      **4.      Tortious Interference with Current and Prospective Business and Contractual
            Relations**

11      Shuffle Master next contends that LT's claim for "tortious interference with current and

12  prospective business and contractual relations" must be dismissed because LT has not obtained any

13  licenses from the State of Nevada permitting it to sell gambling products in the State, and thus it fails

14  to state a claim for interference with contractual relations because there were no valid "contracts" to

15  interfere with.  Doc. 17 at 12-13.  LT responds that reliance on Nevada licensure is misplaced, as its

16  allegations in this Count "are not limited solely to Defendant's activities within the State of Nevada, but

17  rather worldwide, including in Macau and Australia."  Doc. 19 at 9.

18      As the Nevada Supreme Court explained in *Hilton Hotels Corp. v. Butch Lewis Productions,*

19  *Inc.*,[28] "[t]o establish intentional interference with [existing] contractual relations, the plaintiff must

20  show: (1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional

21  acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract;

22  and (5) resulting damage."  A plaintiff prevails on a claim for interference with prospective economic

23  advantage by proving: "(1) a prospective contractual relationship between the plaintiff and a third party;

24  (2) knowledge by the defendant of the prospective relationship; (3) intent to harm the plaintiff by

25  preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual

26

27

28
_____

   [28] 862 P.2d 1207, 1210 (Nev. 1993).

10

harm to the plaintiff as a result of the defendant's conduct."[29]   Additionally, "a plaintiff must show that the means used to divert the prospective advantage was unlawful, improper or was not fair and reasonable."[30]

In addition to referencing the same set of factual allegations that underlie all of the other claims above when pleading these two claims together in a single count, LT offers four new paragraphs: 29-32. Doc. 14 at 4-5.  Of these new allegations, paragraph 31 must be disregarded because it relies on Shuffle Master's "misrepresentations" but again fails to identify with particularity the nature of the misrepresentations.  The remaining paragraphs are not grounded in fraud and may be considered under Rule 8.  Thus, the Court must determine whether paragraphs 29, 30 & 31, combined with paragraphs 12 & 17, state either of the claims pled in this collective count:

> 12. Over the past year, Defendant has begun an international campaign of disparagement of Plaintiff's business and its products and services and has directly and indirectly interfered with Plaintiff's business and potential business activities, dealings and contracts with customers in the United States and in Las Vegas, Nevada.
>
> 17. Defendant is engaging in this course of action willfully and with full knowledge and intent to interfere and damage Plaintiff's business deals with its current and prospect customers.
>                       . . .
> 29. As described herein, Plaintiff has been in communications and negotiations with current and prospective customers for sale of its gaming and casino products.
>
> 30. Defendant has been aware of these communications and negotiations.
>
> 32. Defendant's aforesaid actions have undermined and damaged Plaintiff's business relations with its current and prospective customers and have resulted in the loss of business deals and contracts.

Doc. 14 at 2-5.

Nothing within the four corners of these paragraphs suggests that LT has contracts or business outside of the United States, or that Shuffle Master's "international campaign of disparagement" impacts any *contracts* outside of Nevada.  This appears to conflict, or at least chafe, against its argument that

---

[29] *Wichinsky v. Mosa*, 847 P.2d 727, 729-30 (Nev. 1993); *In re Amerco Derivative Litigation*, 252 P.3d 681, 702 (Nev. 2011).

[30] *Custom Teleconnect*, 254 F. Supp. 2d 1181; *see Crockett v. Sahara Realty Corp.*, 591 P.2d 1135, 1137 (Nev. 1979).

11

1    Shuffle Master's actions, and LT's injury, "are not limited solely to Defendant's activities within the

2    State of Nevada, *but rather worldwide, including in Macau and Australia*."  Doc. 19 at 9 (emphasis

3    added).  But the *Hilton* standard does not require the contract at issue to be forged in Nevada to state

4    a claim for intentional interference with a contract.  LT is missing one critical component of its

5    allegations, however: it failed to allege that these contracts are "valid" and "existing."  Although LT

6    mentions two "customers" located in Las Vegas, Nevada—the "Las Vegas Sands Corporation and the

7    Venetian"—it does not indicate that these "customers" were parties with whom LT had a "valid and

8    existing contract."  Without this critical allegation, LT's claim for interference with existing contracts

9    must be dismissed.

10          This deficiency is not fatal to LT's claim for interference with prospective relationships,

11   however.  The standard for recovery on a "prospective" tortious interference theory does not require

12   pleading the existence of a valid contract.[31]  Thus, the Court finds under Rule 8 that the remaining

13   allegations sufficiently raise a plausible claim for relief.  Shuffle Master's Motion to Dismiss LT's claim

14   for "tortious interference with . . . prospective business and contractual relations" is, therefore, denied.

15   LT's Amended Complaint survives with a sole remaining claim for tortious interference with

16   prospective business and contractual relations.

17   **B.    LT's Motion for Leave to Amend Complaint**

18          In its Opposition to Shuffle Master's motion to dismiss, LT argued that if its First Amended

19   Complaint is found inadequate, it should be permitted leave to file a second amended complaint.  Doc.

20   19 at 8.  On January 24, 2013, Magistrate Judge Foley conducted a discovery hearing in this case and

21   remarked that the allegations in LT's First Amended Complaint appeared inadequate.  *See* Doc. 29 at

22   17-19.  A week later, on the amendment deadline, *see* Doc. 20 at 4, LT moved to file a Second Amended

23   Complaint.  LT suggests that its second amended complaint (proposed as Doc. 37-1) would serve two

24   purposes: (1) permit LT to supplement any insufficient factual allegations; and (2) add a new plaintiff.

25   Doc. 37.  The Court finds that amendment is appropriate **in part**, denies the request to add LT Canada

26   as a party, and rejects the Second Amended Complaint in the form proposed; but the Court grants LT

27

28
_____

         [31] *See Wichinsky*, 847 P.2d at 729-30.

                                              12

leave to amend its own claims to supplement them with properly detailed, true facts to cure the deficiencies identified in the dismissal discussion above.

### 1.    Standard for leave to amend

Rule 15 of the Federal Rules of Civil Procedure requires district courts to "freely give leave [to amend] when justice so requires."[32]  The Ninth Circuit has long recognized that this policy is "to be applied with extreme liberality."[33]  In the seminal leave-to-amend case of *Forman v. Davis*,[34] the United States Supreme Court explained, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [the Plaintiff] ought to be afforded an opportunity to test his claim on the merits."

Still, amendment is not automatic.  If reasons justify denying opportunity to amend, the court has discretion to foreclose amendment.[35]  In the Ninth Circuit, courts consider five factors when determining whether to grant leave: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the plaintiff has previously amended the complaint.[36]  Any of the first four factors can serve as a basis for denying leave to amend,[37] but the analysis focuses on the bad faith of the party seeking to amend the complaint, as well as the prejudice to the other party.[38]

### 2.    Leave is granted for the limited purpose of allowing LT an opportunity to cure the factual deficiencies in its claims.

When applying the factors, the Court finds that limited amendment is warranted.  Although the analysis yields the conclusion that fairness dictates that LT be permitted an opportunity to cure the

[32]  Fed. R. Civ. Proc. 15(a)(2); *Sonoma County Association of Retired Employees v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013).

[33] *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation omitted).

[34] 371 U.S. 178, 182 (1962).

[35] *See Forman*, 371 U.S. at 182.

[36] *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004).

[37] *Chudacoff v. University Medical Center of So. Nev.*, 649 F.3d 1143, 1152 (9th Cir. 2011).

[38] *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992); *In re Western States Wholesale Natural Gas Antitrust Litigation*, 715 F.3d 716, 737 (9th Cir. 2013).

1   pleading deficiencies that the Court has now identified, should LT be able to do so, the Court does not

2   find that a new plaintiff should be permitted based on LT's deadline-date request.

3              **a.    Bad Faith**

4           The Court finds no evidence that LT's request to amend to cure any factual defects in its own

5   claims is brought in bad fath.  LT timely asked for this relief in its opposition to Shuffle Master's motion

6   to dismiss, and it offered some factual supplementation in its proposed Second Amended Complaint.

7           The same cannot be said about LT's request to add LT Canada as a plaintiff on the amendment-

8   request deadline, however.  Although LT claims that its proposal to add its Canadian counterpart was

9   made in response to problems in obtaining discovery from Shuffle Master, as well as "the independent

10  decision of the management and parent company of LT Game Canada to . . . bring action against the

11  Defendant for damages sustained as a result of Defendant's unlawful actions," Doc. 43 at 11, the notion

12  that the LT organization did not know which of its entities was the real party in interest with respect to

13  this lawsuit is unconvincing.  LT was obligated to investigate its claims prior to filing suit, and its

14  threadbare initial complaint and subsequent discovery conduct reflect that any failure to name the

15  correct—or all of the correct—plaintiffs appears to be the result of a lack of diligence not a surprise late

16  in the discovery process.  *See* Doc. 42 at 10-11.  The facts that LT never identified LT Canada as an

17  interested party under Rule 7.1[39] and only sought to add this party after Judge Foley *sua sponte*

18

19          [39] Local Rule 7.1-1 mandates that "[u]nless otherwise ordered . . . counsel for private . . . parties shall

20  identify in the disclosure statement required by Fed. R. Civ. P. 7.1 all persons, associations of persons, firms, partnerships or corporations (including parent corporations) which have a direct, pecuniary interest in the outcome of the case." L.R. 7.1-1(a).  "A party must promptly file a supplemental certification upon any

21  change in the information that this Rule requires."  *Id.* at 7.1-1(c).  In this case, LT represented that "there are no known interested parties other than those named in the caption."  Doc. 10 at 1.  Certification "is time-

22  sensitive because the court uses it to 'evaluate possible recusal.'" *Olds v. Wynn Las Vegas, LLC*, 2012 WL

23  4792919, at *3 (D. Nev. Oct. 9, 2012) (quotation omitted).

            Courts in this district have found that this rule "requires greater disclosure than Federal Rule 7.1, which only requires non-governmental corporate parties to disclose parent corporations or corporations

24  owning more than 10% of the party's stock." *Righthaven v. Democratic Underground, LLC*, 791 F. Supp. 2d 968, 978-79 (D. Nev. 2011).  Other district courts have found that a party's failure to submit a certification

25  after ordered to do so by the Court warrants dismissal of the action. *See, e.g.*, *National Credit Union Administration Board v. North Star Business Services, LLC*, 2012 WL 4076152, at *1-*2 (D. Nev. Aug. 21,

26  2012); *United States v. DiIullo*, 2007 WL 3124544, at *1 (D. Nev. Oct. 23, 2007).  Although the Court has found no case addressing the duty to *supplement* its Certification, nothing in the plain language of the Local

27  Rule suggests that a different result should be reached in this instance.  Notably, in *Righthaven*, the Court ordered additional briefing on the topic of why disclosure had not been made, indicating why it should not be

28  sanctioned for failing to disclose other parties' interests in the case.  *See id.* at 978-79.

1    questioned the adequacy of LT's allegations at a hearing further suggest a complete lack of diligence

2    and bad faith in the investigation of the true owner of these claims.  Thus, the bad faith factor weighs

3    in favor of allowing LT to amend its claims to supplement with facts to cure the deficiencies identified

4    in dismissing these claims but against permitting LT Canada to participate as a new plaintiff in this case.

5                **b.    Undue delay**

6            The Court similarly finds that LT did not unduly delay its request to amend to add new factual

7    allegations to support its existing claims, but it did unduly delay in identifying LT Canada on the final

8    day for seeking leave to amend pleadings.  "In assessing timeliness, we do not merely ask whether a

9    motion was filed within the period of time allotted by the district court in a Rule 16 scheduling order.

10   Rather, in evaluating undue delay, we also inquire whether the moving party knew or should have

11   known the facts and theories raised by the amendment in the original pleading."[40]  Consequently,

12   "[d]elay alone does not provide sufficient grounds for denying leave to amend."[41]

13           It strains credulity that LT did not know LT Canada's purported role in this case before filing

14   suit or when filing its first amended complaint in response to Shuffle Master's first motion to dismiss.

15   Even if the request to add this new plaintiff was made by the midnight deadline, if truly meritorious, it

16   should have been made before that.  Thus, this factor weighs in favor of factual amendment but against

17   adding a new party.

18               **c.    Prejudice to the opposing party**

19           "The consideration of prejudice to the opposing party carries the greatest weight."[42]

20   Considering the timing of the requests and the direction of discovery, the Court finds that Shuffle Master

21   will not be prejudiced by permitting LT to amend its complaint only to supplement its existing claims

22   with facts to cure the identified deficiencies.  But adding another plaintiff at this time—in light of the

23   status of this case and when LT should have known about the need for LT Canada's inclusion, if any,

---

24

25   [40] *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) (quotation
     omitted); *see Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 799 (9th Cir. 1991) (finding that an eight-month delay

26   between the time a relevant fact was obtained to the time that leave to amend was sought was unreasonable).

27   [41] *Hurn v. Retirement Fund Trust of Plumbing, Hearing and Piping Industry of Southern California*,
     648 F.2d 1252, 1254 (9th Cir. 1981).

28   [42] *Sonoma*, 708 F.3d at 1117 (quoting *Eminence Capital*, 316 F.3d at 1052).

1   long before January 31, 2013—would unduly prejudice Shuffle Master.  Discovery was completed based

2   on the claims and parties existing in the First Amended Complaint, and a significant amount of

3   discovery has been performed.  *See* Doc. 78 at 2-7.  Discovery is now closed, and Shuffle Master has

4   filed a motion for summary judgment against LT based on the evidence developed in discovery.  Doc.

5   79.  Permitting LT to amend its complaint to add LT Canada as an additional plaintiff would expand the

6   scope of this litigation and necessitate the reopening of discovery.  The Ninth Circuit has recognized

7   that amendment is unduly prejudicial when it would obligate the opposing party to conduct additional

8   discovery.[43]  Although Shuffle Master will not be unduly prejudiced by permitting LT to amend its

9   complaint to cure factual deficiencies, addition of a new plaintiff would be unfair at this juncture.

10                              **d.      Failure of previous amendments to cure pleading deficiencies**

11          Shuffle Master contends that LT has repeatedly failed to cure deficiencies after having had two

12   opportunities to file satisfactory claims, and this fact should cut against any amendment.  Doc. 42 at 15.

13   Although the district court's discretion to deny a motion for leave to amend a complaint is particularly

14   broad when "a plaintiff has previously been granted leave to amend and fails to add the requisite

15   particularity to [its] claims,"[44] LT's first amended complaint was the result of amendment as of right,

16   not upon successful motion and not after dismissal of claims with instructions on how to cure their

17   deficiencies.[45]  Accordingly, this factor does not weigh against amendment in this case.

18                              **e.      Futility**

19          Finally, the Court considers whether amendment would be futile in this case.  The proposed

20   second amended complaint suffers from a number of problems that would result in amendment being

21   futile if the court were to accept and allow the filing of LT's pleading in that form.  For example, the

22   proposed amended pleading defines "Plaintiffs" as LT and LT Canada, collectively, but does a

23   confusing job of explaining which plaintiff is the subject of which allegation or claim.  The Court is also

24   not convinced that the facts as alleged in the proposed second amended complaint provide the requisite

---

26   [43] *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990).

27   [44] *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1167 (9th Cir. 2009),

28   [45] *See Davis v. Social Service Coordinators, Inc.*, 2011 WL 3207818, at *2 (E.D. Cal. July 28, 2011).

1  "how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent

2  statement[s], and why [they are] false"[46] to survive a third motion to dismiss.  Thus, in drafting the next

3  version of the complaint, LT is cautioned that it should err on the side of being overly inclusive and

4  descriptive with the how, what, and why, because the Court is unlikely to permit amendment beyond

5  the opportunity that is being offered by this order absent truly extraordinary circumstances.  Considering

6  that discovery has been completed, the Court can perceive no obstacle to comprehensive factual

7  inclusion except the true lack of a cognizable claim for relief.

8       In sum, the Rule 15(a) factors weigh in favor of permitting LT to file a second amended

9  complaint that cures the factual deficiencies identified above, but they cut against permitting LT to add

10  a new plaintiff in this litigation.  LT's requests for leave to amend are granted only in part; LT may file

11  a newly drafted, second amended complaint within 15 days of this order if it believes it can offer

12  sufficient facts to revive its now-dismissed claims.  Should LT choose not to file an amended complaint

13  on these conditions, the case will proceed on LT's remaining claim for tortious interference with

14  prospective business relations.

**Conclusion**

16       Accordingly, based upon the foregoing reasons and with good cause appearing and no reason

17  for delay,

18       It is **HEREBY ORDERED** that Shuffle Master, Inc.'s Motion to Dismiss **[Doc. 17]** is

19  **GRANTED** in part and **DENIED** in part:

20       1.    It is **GRANTED** as to LT's Unfair Competition claim brought under the Lanham Act,

21             15 U.S.C. § 1125(a)(1)(B).

22       2.    It is **GRANTED** as to LT's Unfair Competition claim brought under the Macao

23             Commercial Code Articles 156-73, Title X, Book I.

24       3.    It is **GRANTED** as to LT's Unfair Competition claim brought under Nevada common

25             law.

26       4.    It is **GRANTED** as to LT's claim for Tortious Interference with Contracts.

---

[46] *Ebeid*, 616 F.3d at 998.

17

5.      It is **DENIED** as to LT's claim for Tortious Interference with Prospective Business

Relations.

It is **FURTHER ORDERED** that LT's Motion for Leave to File Second Amended Complaint

**[Doc. 37] is GRANTED** in part and **DENIED** in part.  LT may file a newly drafted, second amended

complaint within 15 days of this order if it believes it can offer sufficient facts to revive its now-

dismissed claims.  Should LT choose not to file an amended complaint on these conditions, the case will

proceed on LT's remaining claim for tortious interference with prospective business relations.

DATED: March 26, 2014

_____
JENNIFER A. DORSEY
UNITED STATES DISTRICT JUDGE