DARIUSH KEYHANI (DK9673) (*pro hac vice*)
MEREDITH & KEYHANI, PLLC
330 Madison Avenue, 6th Floor
New York, New York 10017
Telephone:      212.760.0098
Direct Dial:    646.536.5692
Facsimile:      212.202.3819
Email: dkeyhani@meredithkeyhani.com

JACQUELYN S. LELEU, ESQ.
Nevada Bar No. 7675
AMANDA C. YEN, ESQ.
Nevada Bar No. 9726
JOSEPH P. SCHRAGE, ESQ.
Nevada Bar No. 11270
McDONALD CARANO WILSON LLP
2300 W. Sahara Avenue, Ste. 1200
Las Vegas, NV 89102
Telephone:      702.873.4100
Facsimile:      702.873.9966
Email: jleleu@mcdonaldcarano.com
       ayen@mcdonaldcarano.com
       jschrage@mcdonaldcarano.com

*Attorneys for Plaintiff LT Game International Ltd.*

# THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| LT GAME INTERNATIONAL LTD., <br><br> Plaintiff, <br><br> v. <br><br> SHUFFLE MASTER, INC., <br><br> Defendant. | CASE NO. 2:12-cv-01216-JAD-GWF <br><br> **THIRD AMENDED COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff LT Game International Ltd. (hereinafter "Plaintiff" or "LT Game International") for its Third Amended Complaint against defendant Shuffle Master, Inc. ("Defendant" or "SHFL") alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action for unfair competition under federal law, the State of Nevada common law, and the Macau commercial code and tortious interference with prospective business and contractual relations.

## PARTIES

2. LT Game International Ltd. is the exclusive agent and licensee of LT Game Ltd.'s ("LT Game") (these two entities collectively hereinafter referred to as the "LT Game Group") business, technology, intellectual property, and products sold to customers outside of Macau and has a principal place of business located at 289 Pilot Road, Suite B, Las Vegas, Nevada 89119.

3. Plaintiff is in the business of marketing, offering for sale, and selling technologically innovative and proprietary gaming and casino products and services to customers in the gaming and casino industry.

4. Defendant is a direct competitor of Plaintiff in the business of marketing and selling gaming and casino products to customers in the gaming and casino industry throughout the world, including in Las Vegas, Nevada.

## JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, §1338 and §1367 as the present case arises under the Lanham Act, 15 U.S.C. §1051 et seq., and as is hereinafter more fully described.

6. Venue is proper in this district pursuant to 28 U.S.C. §1391.

7. Defendant is headquartered in this Judicial District and accordingly is subject to the Jurisdiction of this Court.

## BACKGROUND

**A.   SHFL's Inability to Compete with LT Game in the Macau Electronic Table Systems("ETS") Market Segment and the LT Game Group's Expansion Outside of Macau**

8. LT Game Group's Live Table Multi Game electronic gaming product ("LTMG") is installed at gaming operations all across Macau and the LT Game brand, and LTMG enjoy a reputation of being innovative and well liked. LT Game dominates the ETS segment in Macau, controlling more than 50% of the market share.

9. The LT Game and SHFL compete in the Macau gaming market and both companies have competing products in the market's ETS segment. The Macau gaming market is the largest in the world and is more than five times the size of the Las Vegas strip.

10. SHFL's Rapid product line ("Rapid") directly competes with the LTMG. SHFL has been unsuccessful in the Macau ETS market and has only been able to realize less than 5% percent of the market share.

[redacted]

**B.  SHFL's Early History of Unfair Competitive Acts**

13. SHFL has systemically been unfairly competing with the LT Game Group in gaming markets throughout the world through the use of threats, disparagement of the LT Game brand and its products, and direct and indirect interference with Plaintiff's business deals and prospective deals.

14. During the period of July 2009 through May 2010 and again in April 2011 and 2012, Defendant's Senior Vice Presidents, including Jim Jackson, and other SHFL representatives attempted to coerce and threaten LT Game President, Jay Chun, into giving SHFL its valuable patents by entering a shared patent pool, where LT Game would put all of its patents and SHFL would put nothing valuable. Defendant threatened that if Chun did not comply, SHFL would exhaust LT Game through litigation.

15. SHFL's unscrupulous method of competition has not gone unnoticed. Defendant currently faces two criminal investigations and an outstanding criminal appeal in Macau.

16. The gaming market is a highly regulated tight knit community, comprised of a small number of buyers that operate gaming properties throughout the world. Reputation is important, and word travels fast.

**C.  SHFL's Unfair Competition and Interference with Plaintiff's Current and Prospective Deals at the 2012 Global Gaming Expo Asia ("G2E Asia") Tradeshow**

17. Both SHFL and the LT Game Group attended the G2E Asia in Macau in May 2012. Regarded as one of the premier global gaming events, several gaming executives, including Plaintiff's current and potential customers, attended.

18. Prior to the 2012 G2E Asia in Macau, the LT Game Group learned that SHFL planned to display a product that infringed its Macau patent. LT Game obtained a preliminary injunction from the court in Macau and pursuant to this injunction, SHFL was to refrain from publicly displaying the infringing products. SHFL did not comply.

19. On May 22, 2012 SHFL CEO Gavin Isaacs enlisted the help of trade show organizers Tom Loughran of Reed Exhibitions and his friend Frank J. Fahrenkopf, President of the American Gaming Association, to strong arm and coerce LT Game to drop its injunction.

[redacted]

4

1  22. To mitigate the damage caused by SHFL and to try to prevent further harm, LT Game had no choice but to drop the injunction against SHFL'S infringing product.

[paragraphs 3–25 redacted]

26 . . .

27 . . .

28 . . .

1  **E.     SHFL Continues to Make False Statements to Members of the Gaming Community**

3  29.    Defendant has contacted many of Plaintiff's current and prospective customers and has made false statements to them about the LT Game brand and LT Game Group products, including the LTMG.  Many of Plaintiff's current and prospective customers have been deceived by Defendant's false statements.

13  31.    The statements made to Plaintiff's prospective customers, business affiliates, and members of the gaming community are false because the LT Game Group has never bribed any judges or engaged in any unlawful activity.



39. The false statements that the LT Game Group cannot sell its products, including the LTMG, outside of Macau is false. There are no legal or regulatory restrictions or prohibitions against Plaintiff selling the LTMG outside of Macau and the LTMG has and continues to be sold and installed outside of Macau, including sales to the Melco Crown property in Australia and the Las Vegas Sands in the U.S. SHFL's false statement deceived Evans and Hann, who expressed surprise when they learned that the statement was not true.

42. Defendant's actions and false statements have resulted in substantial reputational and business damage to Plaintiff and limited Plaintiff's opportunity to display, market, sell, and promote its products and services to customers in both the international and United States-based gaming community.

43. Plaintiff has no adequate remedy at law.

## COUNT I
## UNFAIR COMPETITION (LANHAM ACT)

44. Plaintiff repeats each and every allegation set forth herein in the preceding paragraphs as though fully set forth herein.

45. Defendant has made false statements about Plaintiff's brand and its products to members of the gaming community, including but not limited to statements that LT Game Group products and Plaintiff's sale of the LTMG in the U.S. infringes Defendant's patents, the LTMG cannot be sold outside of Macau, the LT Game Group bribed Macau judges, and the LT Game Group is an unethical company.

46. The statements made by Defendant are false, as LT Game Group products do not infringe Defendant's U.S. patents, the LTMG has and continues to be sold outside of Macau and there are no legal or regulatory restrictions or prohibitions against Plaintiff selling the LTMG outside of Macau, the LT Game Group has never bribed judges, and the LT Game Group is an ethical company.

47. Defendant's false statements have deceived Plaintiff's current and prospective customers and materially influenced their purchasing decisions and constitute unfair competition under 15 U.S.C. § 1125(a)(1)(B) of the federal Lanham Act.

48. Plaintiff's prospective deals and contracts have been negatively impacted in terms of bargaining power, opportunity, scope of commitments, terms, and value as a result of Defendant's statements and actions.

49. Defendant's aforesaid activities have damaged and caused, and are damaging and causing, irreparable harm to Plaintiff.

## COUNT II
## UNFAIR COMPETITION (NEVADA COMMON LAW)

50. Plaintiff repeats each and every allegation set forth herein in the preceding paragraphs as though fully set forth herein.

51. Defendant has unfairly competed with Plaintiff by making false statements to Plaintiff's current and prospective customers, and other members of the gaming community.

52. These false statements have deceived Plaintiff's current and prospective customers and caused Plaintiff's deals and contracts to be negatively impacted in terms of bargaining power, opportunity, scope of commitments, terms, and value.

53. Defendant's unfair acts also include but are not limited to the events at the 2012 G2E Asia. These events include but are not limited to Defendant coercing the LT Game Group to relinquish its intellectual property rights and preventing Plaintiff from interacting with customers by placing metal barriers around the LT Game booth.

54. Defendant's aforesaid activities constitute unfair competition under State of Nevada's common law.

55. Defendant's aforesaid activities have damaged and caused, and are damaging and causing, irreparable harm to Plaintiff.

## COUNT III
## UNFAIR COMPETITION (MACAU LAW – COMMERCIAL CODE)

56. Plaintiff repeats each and every allegation set forth herein in the preceding paragraphs as though fully set forth herein.

57. Defendant's aforesaid activities constitute unfair competition under Macau Commercial Code Articles 156-173, Title X, Book I. Attached hereto as **Exhibit 1** is a true and correct English version of the Macau Commercial Code, Articles 101-200, Title X, Book 1.

58. Defendant's aforesaid activities have damaged and have caused, and are damaging and causing, irreparable harm to Plaintiff.

**COUNT IV**
**TORTIOUS INTERFERENCE WITH CURRENT AND PROSPECTIVE BUSINESS AND CONTRACTUAL RELATIONS**

59. Plaintiff repeats each and every allegation set forth herein in the preceding paragraphs as though fully set forth herein.

[REDACTED]

61. Defendant has been aware of these communications and negotiations.

62. Defendant, directly and through its agents, have intentionally made false statements regarding Plaintiff and its products in order to undermine, interfere, and obstruct Plaintiff from making business relations, deals, and contracts for the sale of their products with current and prospective customers.

63. Defendant's aforesaid actions have undermined and damaged Plaintiff's business relations with its current and prospective customers and have resulted in the loss of business deals and contracts.

64. Defendant's aforesaid activities have damaged and caused, and are damaging and causing irreparable harm to Plaintiff.

**REQUESTED RELIEF**

WHEREFORE, Plaintiff prays that:

A. Defendant, its agents, servants, employees, franchisees, licensees, attorneys, and all other in active concert or participation with Defendant, be enjoined and restrained, permanently from:

    1. Making false statements regarding Plaintiff, its business and commercial activities, and/or its products, including the LTMG, or services to any current or prospective customers of the Plaintiff, the gaming and casino industry, and/or to the public;

    2. Unfairly competing with Plaintiff in any manner;

B. Plaintiff recover Defendant's profits, as well as the damages sustained by Plaintiff as a result of Defendant's unlawful actions, such amount of profits and damages to be trebled;

C. Defendant be required to pay Plaintiff's costs of this action, together with reasonable attorneys' fees and disbursements;

D. Plaintiff be awarded statutory damages pursuant to the Lanham Act; and

E. Plaintiff be awarded any other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues properly triable by jury in this action.

RESPECTFULLY SUBMITTED this 10th day of April, 2014.

MEREDITH & KEYHANI, PLLC

By: */s/ Dariush Keyhani*
Dariush Keyhani, Esq. (DK9673) (*pro hac vice*)
330 Madison Avenue, 6th Floor
New York, New York 10017
Telephone:   21.2760.0098
Direct Dial:   646.536.5692
Facsimile:   212.202.3819
Email:   dkeyhani@meredithkeyhani.com

Jacquelyn S. Leleu, Esq. (#7675)
Amanda C. Yen, Esq. (#9726)
Joseph P. Schrage, Esq. (#11270)
McDONALD CARANO WILSON LLP
2300 W. Sahara Avenue, Ste. 1200
Las Vegas, NV  89102
Telephone:   702.873.4100
Facsimile:   702.873.9966
Email:   jleleu@mcdonaldcarano.com
   ayen@mcdonaldcarano.com
   jschrage@mcdonaldcarano.com

*Attorneys for Plaintiff LT Game International Ltd.*

LVDOCS-#302889

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am an employee of McDonald Carano Wilson LLP, and that on the 10th day of April, 2014, a true and correct copy of the foregoing **THIRD AMENDED COMPLAINT; JURY TRIAL DEMANDED** was electronically filed with the Clerk of the Court by using CM/ECF service which will provide copies to all counsel of record registered to receive CM/ECF notification.

*/s/ Della Sampson*
An employee of McDonald Carano Wilson LLP