James J. Pisanelli, Esq., Bar No. 4027
JJP@pisanellibice.com
Christopher R. Miltenberger, Esq., Bar No. 10153
CRM@pisanellibice.com
Eric T. Aldrian, Esq., Bar No. 11897
ETA@pisanellibice.com
PISANELLI BICE PLLC
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169
Telephone: (702) 214-2100
Facsimile: (702) 214-2101
*Attorneys for SHFL entertainment, Inc.,*
*f/k/a Shuffle Master, Inc.*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| LT GAME INTERNATIONAL LTD.,<br><br>Plaintiff,<br><br>vs.<br><br>SHUFFLE MASTER, INC.,<br><br>Defendant. | Case No.: 2:12-cv-01216-JAD-GWF<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED COMPLAINT, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT** |

## I.   INTRODUCTION

Although this Court granted LT Game International Ltd. ("LT Game International") leniency in allowing it to file a Third Amended Complaint sight unseen, it provide a stern warning that LT Game International "should err on the side of being overly inclusive and descriptive of the how, what and why" when doing so.   LT Game International failed to heed this Court's admonition and filed a Third Amended Complaint with hollow allegations of "false statements" made by still unidentified representatives of Shuffle Master, Inc. ("SHFL").   Instead of defending the allegations pled in its Third Amended Complaint, LT Game International's Opposition weaves a fantastical tale without evidentiary support.   LT Game International has failed to plead sufficient facts to state actionable claims against SHFL and has otherwise failed to present this Court with admissible evidence sufficient to raise any triable issue of fact.   As such, the Court should dismiss LT Game International's Third Amended Complaint or otherwise enter summary judgment against those claims and dispose of this case in its entirety.

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

## II.   DISCUSSION

### A.   The Third Amended Complaint Does Not Satisfy FRCP 9(b).

#### 1.   All of LT Game International's Claims Sound in Fraud.

Ignoring this Court's articulate decision and in effect conceding the merit of SHFL's Motion to Dismiss, LT Game International argues that it is not required to plead any of its claims with particularity and makes no effort to demonstrate that it has complied with FRCP 9(b).  (Opp., 26:6-18.)  In support of its contention, LT Game International makes the unsupportable assertion that the "Third Amended Complaint does not contain any 'fraud-based' averments."  Nonsense.

As this Court recognized, whether a claim sounds in fraud is not triggered by the use of certain buzzwords.  (Dkt. #112, Order at 5:21-6:13.)  Instead, the Court must analyze the claims to determine whether they are "grounded in fraud."  (*Id.* at 6:4-6); *See Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1102–06 (9th Cir. 2003).  Not only did this Court explain that other courts have found that unfair competition claims based on false statements are subject to Rule 9(b), it questioned whether any Lanham Act false advertising claim could escape the requirements of Rule 9(b).  (Dkt. #112, Order at 6 n. 16.)  As the Court surmised:

> Indeed, it is likely that most false advertising claims under §1125(a)(1)(B) will trigger Rule 9(b) scrutiny because the first prong of the standard requires alleging that the defendant made a 'false' statement and, thus, the plaintiff will allege either that a 'false' representation was made with the intent to deceive (fraud), or that the false representation was made unwittingly, without the intent to deceive (mistake).

Such is precisely what LT Game International has done in this case. ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮ (Dkt. 115, Third Amended Complaint ("TAC") at ¶¶

45-47.)[1] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* at ¶¶ 51-52, 57, 62; *see also*

Opp., 16:11-15 (explaining that its claim under Macau law is predicated on the "making or broadcast of statements").)  Contrary to LT Game International's belief, it cannot circumvent its

---

[1] Citations are to the sealed version of the Third Amended Complaint.

requirement to plead claims with particularity simply by not drafting around the words "fraud" and "misrepresentation." *Vess,* 317 F.3d at 1102–06; *see also* Dkt. 112, Order at 5:12-6:13. LT Game International fell woefully short in its pleading requirements and its Opposition fails to even make an attempt to demonstrate that Rule 9(b)'s requirements were met.

### 2. LT Game International Does Not Plead the Who, What, When, Where and How of the Allegedly False Statements.

Forgetting the allegations advanced in its first three failed complaints, LT Game International dropped references to the supposed "misrepresentations" regarding the "nature and quality" of LT Game International's products in its latest compalint.[2] ███████████████

██████████████████████████████████████████████████████████

████████████████████████████████ (Dkt. 115, TAC at ¶¶ 29-32, 35-39, 45-47.)[3]  As to any of these purported statements, LT Game International makes no effort to plead who made those statements, when those statements were made, or even how those statements are false.  LT Game International's vague allegations regarding statements purportedly made by unnamed "SHFL" representatives are insufficient as a matter of law and its fraud-based claims should be dismissed. *Vess,* 317 F.3d at 1102-06.

### B. LT Game International Failed To Plead An Actionable False Statement To Support Its Lanham Act Claim.

Even if LT Game International had pled its claims with the requisite particularity (which it has not) it has still not pled any actionable false statements to support its Lanham Act or related

---

[2] Without any authority, LT Game International invites this Court to disregard the limitations imposed on LT Game International requiring it to plead facts consistent with its prior pleadings.  It does so by arguing that SHFL should have found out through discovery that LT Game International had no intention of prosecuting claims consistent with the allegations alleged in its first three complaints. (Opp. at 2 n.1.)  That is not the law. *See Reddy v. Litton Indus., Inc.,* 912 F.2d 291, 296-97 (9th Cir. 1990) ("Although leave to amend should be liberally granted, the amended complaint may only allege other facts consistent with the challenged pleading."); *Bradley v. Chiron Corp.,* 136 F.3d 1317, 1324-26 (Fed.Cir.1998) (disregarding "sham" facts in an amended complaint that contradicted the factual allegations pled in the original and represented "a transparent attempt to conform the facts to the requirements of the cause of action").

[3] The one fraud-based allegation pled with any particularity concerns an e-mail string between SHFL's then-CEO and a trade organization.  (Dkt. 115, TAC at ¶ 40-41.)  As addressed below, such a statement is not actionable as a matter of law.

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

unfair competition claims.[4]   As vaguely alleged in its Third Amended Complaint and further articulated in its Opposition, LT Game International predicates its claims on three categories of false statements: (1) statements to customers as to LT Game International's ability to sell products outside of Macau; (2) statements that LT Game International's products may infringe patents; and (3) statements of opinion to a non-customer about the business practices of a non-party.   No such statements are actionable under the Lanham Act.

### 1.   The Statements Did Not Constitute Advertising Or Promotion.

In order to support a claim for false advertising, LT Game International was required to plead, and ultimately provide sufficient facts to demonstrate, that SHFL made false statements "in commercial advertising or promotion." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999).   "While the representations need not be made in a 'classic advertising campaign,' but may consist instead of more informal types of 'promotion,' the representations must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999) (citation omitted)).   Accordingly, the inquiry as to whether something constitutes "promotion" under the Lanham Act "focuses on the 'relevant industry' and whether the communication was sufficiently disseminated in that context." *Gonzalez v. Allstate Ins. Co.*, CV 04-1548FMCPJWX, 2005 WL 5891935, *7 (C.D. Cal. Aug. 2, 2005).   In determining if such statements constitute "promotion" within the industry, courts look to see if the allegedly false statement was disseminated to a "statistically significant part of the commercial audience" relating to such a statement. *Johnson & Johnson * Merck Consumer Pharm. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 298 (2d Cir. 1992).   LT Game International has neither pled, not provided sufficient evidence, that SHFL's purported false statements were disseminated wide enough to constitute "advertising" or "promotion" under the Lanham Act.

---

[4] The pleading deficiencies relating to the Lanham Act claim are equally applicable to LT Game International's unfair competition claims under Nevada and Macau law. *See Caesars World, Inc. v. Milanian*, 247 F. Supp. 2d 1171, 1193 (D. Nev. 2003) (recognizing that the elements of a claim for unfair competition under Nevada common law "are identical to the elements necessary under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)."); Macau Com. Code, Chap. II, Art. 162 (requiring the "making or broadcast of statements" to support a claim of unfair competition.

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

At best, LT Game International has alleged that unknown SHFL representatives made statements to three customers: ████████████████████████████████ Based on its unsubstantiated allegations that the gaming market is "close knit" and that "word travels fast" in the industry, LT Game International claims that these few one-off statements are sufficient to constitute "promotion" under the Lanham Act. (Opp., 14:1-15:2.) They are not.

Courts are legion for the proposition that statements made to only a handful of potential customers are not actionable as a matter of law. *William H. Morris Co. v. Grp. W, Inc.*, 66 F.3d 255, 258 supplemented sub nom. *William H. Morris Co. v. Grp. W. Inc.*, 67 F.3d 310 (9th Cir. 1995) (evidence of statements to 8 out of 300 customers insufficient); *Prof'l Sound Servs., Inc. v. Guzzi*, 349 F. Supp. 2d 722, 728 (S.D.N.Y. 2004) *aff'd*, 159 F. App'x 270 (2d Cir. 2005)(statement to one customer of 36 customers insufficient); *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 58 (2d Cir. 2002) (27 statements insufficient); *Sports Unlimited, Inc. v. Lankford Enterprises, Inc.*, 275 F.3d 996, 1004-05 (10th Cir. 2002) (statements to 2 of 150 customers insufficient).[5] Although the gaming industry is smaller than some other less-regulated industries, any claim that there are not hundreds, if not thousands, of potential customers for LT Game International's products is patently absurd. Globally, there are in excess of 2,300 gaming facilities offering live dealer table games and far more than 600 separate and distinct corporate/parent operators of those gaming facilities. (Ex. C, M. Hultberg Decl. at ¶¶ 6-7.)[6] In

---

[5] *See also Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 133 (3d Cir. 1994)(a showing that 7.5% of advertising recipients were deceived insufficient); *Premier Comp Solutions, LLC v. Penn Nat. Ins. Co.*, CIV.A. 07-1764, 2012 WL 1038818 (W.D. Pa. Mar. 28, 2012)(statements to five out of hundreds insufficient); *SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*, 642 F. Supp. 2d 167, 203 modified on reconsideration, 642 F. Supp. 2d 206 (S.D.N.Y. 2009)(one statement insufficient); *Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F.Supp.2d 1168, 1182 (N.D.Cal. 2007) (a "handful of statements" insufficient); *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 299 F.Supp.2d 565, 573 (E.D.Va. 2004) ("Where it is clear, however, that the relevant market is large and that the alleged contacts are comparatively trivial, dismissal for failure to state a claim is appropriate."); *Professional Sound Servs., Inc. v. Guzzi*, 349 F.Supp.2d 722, 729 (S.D.N.Y. 2004) (statements to one of 36 customers insufficient).

[6] The "court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment, as long as the facts noticed are not subject to reasonable dispute." *Intri–Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007); *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.1986) (finding that under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record").

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

fact, there are over 150 gaming facilities offering live dealer table games in the State of Nevada alone.   (Ex. D, Nevada Nonrestricted Count Report.[7])   In light of this "relevant industry," statements made to only three of these potential customers does not constitute "promotion" for the purposes of the Lanham Act. *William H. Morris Co.*, 66 F.3d at 258; *Fashion Boutique of Short Hills, Inc.*, 314 F.3d at 58.

Ignoring both the law and the realities of the gaming industry, LT Game International rests its position on two readily distinguishable case.   LT Game International points to *Coastal Abstract Service* and argues that even one false statement can be actionable.   (Opp., 14:1-15:2.) However, in *Coastal Abstract Service*, the Ninth Circuit found that a plaintiff stated a claim under the Lanham Act where evidence was provided of false statements made to one customer where "there were only two possibly three" potential customers.   173 F.2d at 735.   In light of the unique circumstances and the fact that statements to one customer in that case potentially represented statements to 50% of the relevant industry, the court found sufficient evidence to present the question to the finder of fact. *Id.*

Similarly, in *Gonzalez* an insurance salesman who was terminated by Allstate claimed false advertising when his former employer sent mass mailings to all of his former customers after his termination. *Gonzalez*, 2005 WL 589135 at **3-6.   In essence, defendant in that case made false statements to the entire "relevant industry" in dispute (*i.e.* plaintiff's former customers). *Id.* Such conduct is far afield of anything close to the allegations in this matter.

Here, all that is alleged are statements allegedly made to three out of the hundreds, if not thousands, of potential customers in the gaming industry.   Such statements do not constitute promotion as a matter of law and LT Game International's Lanham Act claims fails. *William H. Morris Co.*, 66 F.3d at 258; *Fashion Boutique of Short Hills, Inc.*, 314 F.3d at 58; *see eMove Inc. v. SMD Software Inc.*, No. CV-10-02052-PHX-JRG, 2012 WL 1379063, *5 (D. Ariz. Apr. 20, 2012) ("isolated disparaging statements" are insufficient to constitute "promotion").

---

[7] *Id.*; The attached exhibit is publicly available from the Nevada Gaming Control Board, at: http://gaming.nv.gov/modules/showdocument.aspx?documentid=3430 (last accessed June 25, 2014). Exhibit D is highlighted to reflect each unique gaming facility offering at least one table game.

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

2. *Statements Purporting to Interpret the Meaning of Statutes or Regulation Are Not Actionable.*

Although the alleged statements do not constitute "promotion" as a matter of law, those statements are likewise not actionable for additional reasons. As explained in the very authority that LT Game International trumpets in its Opposition, "statements by laypersons that purport to interpret the meaning of a statute or regulation are opinion statements, and not statements of fact." *Coastal Abstract Serv.,* 173 F.3d at 731 (citations omitted). Of course, "[s]tatements of opinion are not generally actionable under the Lanham Act." *Coastal Abstract Serv.,* 173 F.3d at 731 (citations omitted). As demonstrated in *Coastal Abstract Service,* statements by a competitor that another company does not have the requisite license to operate the business it intends to conduct is not actionable as a matter of law. *Id.,* 173 F.3d at 732. ("Thus, even if a California court ultimately concludes that § 17200 does not require that a company in Coastal' s position obtain an escrow license, the licensure statement *as a matter of law could not give rise to a Lanham Act claim.*") (emphasis added).

Just like the alleged statements in *Coastal Abstract Service,* LT Game International alleges ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ (Dkt. 115, TAC at ¶¶ 35, 37, 39, 45.) Of course, there is no reasonable dispute that an entity selling gaming equipment is in fact required to obtain licenses, registrations, or other approvals on a jurisdiction-by-jurisdiction basis in compliance each jurisdiction's gaming laws. For example, Nevada law requires a party to secure registrations before entering into contracts relating to the manufacture, sale or distribution of gaming devices. *See* NRS 463.650 ("[I]t is unlawful for any person . . . to operate, carry on, conduct or maintain any form of manufacture, selling or distribution of any gaming device . . . without first procuring and maintaining all required federal, state, county and municipal licenses."); NGC Reg. 14.260 ("[A] manufacturer or distributor of associated equipment shall not distribute associated equipment unless it has been approved by the chairman."). Most, if not all, other jurisdictions have similar licensure or registration requirements. (Ex. E, Rumbolz Report; Ex. F, Rumbolz Tr., 35:1-25, 39:9-40:11, 78:22-25,

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

81:17-82:12.)   Therefore, even if some unknown representative of SHFL made statements regarding LT Game International's ability or inability to sell products outside of Macau, those statements are not actionable as a matter of law. *Coastal Abstract Serv.*, 173 F.3d at 732.

### 3.   *Statements of Opinion to Non-Customers Are Not Actionable.*

The last purported false statement upon which LT Game International predicates its claims is an e-mail string between SHFL's former CEO and the director of a trade organization for gaming equipment manufacturers. (Dkt. 115, TAC at ¶¶ 40-41, 45; Opp., 8:19-27.)  Even if the Court was to consider these statements despite the infirmities addressed above, they are still not actionable.  This is because it is axiomatic that in order to support a false advertising claim a plaintiff is required to demonstrate that the purported false statements were made *to customers*. *See Cancer Genetics, Inc. v. Hartmayer*, CIV. 07-5463(FSH), 2008 WL 323738, *10 (D.N.J. Feb. 5, 2008); *see also H & R Indus., Inc. v. Kirshner*, 899 F. Supp. 995, 1003 (E.D.N.Y. 1995). Further, the purported false statement must be one of fact, not opinion. *Coastal Abstract Service*, 173 F.3d at 731.   LT Game International's allegations and purported evidence regarding these alleged false statements fail on both accounts.

As LT Game International acknowledges, Marcus Prater is the Executive Director of the Association of Gaming Equipment Manufacturers ("AGEM").   (Dkt. 115, TAC at ¶ 40.) Nowhere in LT Game International's Third Amended Complaint or its Opposition does it claim that AGEM is a gaming operator or potential customer, nor could it.  As explained on its website, AGEM "is a non-profit international trade association representing manufacturers and suppliers of electronic gaming devices, systems, table games, key components and support products and services for the gaming industry." (*See* Ex. G, "Our Mission," AGEM Website, available at: http://www.agem.org/index.html (last viewed June 27, 2014).)  As there is no credible argument that AGEM is a customer, any statements, even if false, are not actionable. *Cancer Genetics*, 2008 WL 323738 at *10.

Moreover, even ignoring the fact that AGEM is not a potential customer as well as the fact that the allegedly false statement concerned non-party LT Game Ltd. ("LT Game"), the purported false statements were merely those of opinion.  For example, in the context of defamation,

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

statements regarding dishonesty or unethical behavior are considered opinions. *See Redco Corp. v. CBS, Inc.*, 758 F.2d 970, 972 (3d Cir.1985); *see also Lewis v. Time Inc.*, 710 F.2d 549, 556 (9th Cir. 1983); *Lauderback v. Am. Broad. Companies, Inc.*, 741 F.2d 193, 198 (8th Cir. 1984); *see also Biber v. Duplicator Sales & Serv., Inc.*, 155 S.W.3d 732, 738 (Ky. Ct. App. 2004).  When questioned regarding the substance of the allegedly false statement, Mr. Isaacs explained to LT Game International that he was simply expressing his opinion:



(Ex. H, Isaacs Tr., 47:7-18) (emphasis added.)  Such statements of opinion to non-customers are not actionable under the Lanham Act as a matter of law. *Cancer Genetics*, 2008 WL 323738 at *10; *Coastal Abstract Service*, 173 F.3d at 731.

**C.    This Court Lacks Jurisdiction Without The Lanham Act Claims.**

LT Game International acknowledges, as it must, that if its Lanham Act claim is dismissed, this Court lacks subject matter jurisdiction over the remaining case. (Opp., 21:17-18.) Nevertheless, LT Game International encourages this Court to exercise jurisdiction regardless of the futility of its sole federal claim giving this Court jurisdiction.  It should not.

As the Supreme Court has found, "[i]f the federal claims are dismissed *before trial*, even though not insubstantial in a jurisdictional sense, *the state claims should be dismissed as well*." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139 (1966) (emphasis added).   While this Court may weigh a variety of factors in determining whether to retain jurisdiction over the remainder of the case, the guidance from the Supreme Court has indicated that those factors generally "will point toward declining to exercise jurisdiction over the

remaining state-law claims." *Carneigie-Mellon Univ. v. Cohill*, 383 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n.7 (1988). In the face of lacking subject matter jurisdiction, there is no reason for this Court to maintain the remaining state law claims.

While LT Game International argues that the case has been pending for over two years, it fails to acknowledge that due to the inadequacy of its own pleadings, the time for SHFL to file an answer has still not yet come to pass. Likewise, LT Game International's claim that it conducted discovery "in contemplation of the application and practice of the Federal Rules of Civil Procedure and Federal Rules of Evidence" is a non sequitor. LT Game International points to no Nevada rules that would impact its ability to prosecute its claims in state court. Similarly, LT Game International's complaint that it would have to hire alternative counsel if the remaining claims were sent to state court is disingenuous. LT Game International has employed more than competent local counsel from the inception of this litigation. In short, without the Lanham Act claim, this Court lacks jurisdiction and the case should be dismissed. *Gibbs*, 383 U.S. at 726.

## D.   Irrespective Of The Pleading Deficiencies, LT Game International Still Fails To Present Admissible Evidence To Create Genuine Issues Of Material Fact.

In order to survive summary judgment, LT Game International was required to present specific facts demonstrating that there is a factual dispute about a material issue." *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). To satisfy this burden, LT Game International was required to do more than claim it will "discredit" SHFL's "evidence at trial and proceed in hope that something can be developed at trial in the way of evidence to support its claim." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)). In fact, LT Game International was required to produce "significant probative evidence" to support its claims. *Id.* A "mere existence of a scintilla of evidence" is not enough. *United States ex rel. Anderson v. N. Telcom, Inc.*, 52 F.3d 810, 815 (9th Cir. 1995). LT Game International has failed to satisfy its burden of demonstrating that a reasonable jury could possible find in its favor, warranting summary judgment as to any claims not dismissed under Rule 12(b). *Id.*

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

      **1.**      *Self-Serving, Double and Triple Hearsay Testimony Is Not Admissible, Nor Sufficient to Avoid Summary Judgment.*

By and large, LT Game International's Opposition attempts to present the appearance of a genuine issue of material fact based on the testimony and declarations of its sole principal, Frank Feng, and his brother-in-law benefactor, Jay Chun. ████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

████████ (*See, e.g.,* Dkt. 97 Feng Decl., ¶¶ 8, 10-11; Opp., Ex. 1, Feng Tr., Vol. I, 139:25-140:6, 147:15-148:2; Opp., Ex. 10, Feng Tr., Vol. II, 125:6-126:12.)   LT Game International openly admits that this testimony is replete with hearsay. (*See* Opp., 21:6-10.) Nevertheless, contrary to LT Game International's belief and misunderstanding of the law, hearsay evidence is not generally admissible at the summary judgment stage and cannot be considered. *Romero v. Nevada Dept. of Corrections,* CV-808-JAD-VCF, 2013 WL 6206705, *3 (D. Nev. Nov. 27, 2013) (citing *Orr v. Bank of America,* 285 F.3d 764, 773-74 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."); *see also Hollingsworth Solderless Terminal Co. v. Turley,* 622 F.2d 1324, 1335 n.9 (9th Cir. 1980).

LT Game International argues that it can circumvent the law by presenting admittedly inadmissible evidence and claim that it can possibly present that evidence in an admissible form at trial. (Opp., 20:22-21:10.) Of course, under that theory and misinterpretation of the law, summary judgment could never be granted because the nonmoving party could ***always*** claim that it is ***possible*** that it will secure and present evidence at trial. Simply put, LT Game International is wrong on the law.

It is true that, "[t]o survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial." *Fraser v. Goodale,* 342 F.3d 1032, 1036 (9th Cir. 2003). However, the evidence in question ***must be capable*** of being presented "in an admissible form at trial." *Fonseca v. Sysco Food Servs. of Ariz., Inc.* 374 F.3d 840, 846 (9th Cir. 2004). This does not mean that every piece of "evidence" is automatically considered.

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

1    The case of *Fraser v. Goodale*, 342 F.3d 1032 (9th Cir. 2003) is instructive.  There, the

2    Ninth Circuit considered whether plaintiff had presented sufficient evidence to preclude entry of

3    summary judgment.  The evidence in question was plaintiff's own deposition testimony, which

4    included testimony from the witness reading certain portions of her diary.  Defendant argued that

5    the contents of the diary were inadmissible hearsay and thus could not be considered for purposes

6    of the motion. The Ninth Circuit ultimately disagreed because, although the contents of the diary

7    may have been inadmissible hearsay, plaintiff would be able to testify about the same things from

8    memory at trial such that the evidence being offered (plaintiff's own testimony) would not

9    constitute hearsay.   In other words, although the contents of the diary may have been

10   inadmissible, plaintiff's testimony about the contents could be presented in an admissible form at

11   trial – namely, through her own testimony.  The Ninth Circuit thus instructed the trial court to

12   consider the testimony for purposes of summary judgment.

13        Unlike the plaintiff in *Fraser* who was able to personally testify to the contents of her

14   diary after refreshing her recollection, Feng and Chun will ***never*** be able to testify as to what third

15   parties allegedly heard from someone at SHFL.  This testimony contains double hearsay that does

16   not fall under any exception, and is therefore inadmissible for any purposes during summary

17   judgment. *Lucey v. City of Reno*, 3:04-CV-00637-BES-PAL, 2008 WL 821585, at n.2 (D. Nev.

18   Mar. 27, 2008) ("double hearsay cannot be considered on a motion for summary judgment");

19   *Sobel v. Hertz Corp.*, 291 F.R.D. 525, 533 (D. Nev. 2013).  Unlike the evidentiary objections to

20   plaintiff's testimony in *Fraser* that could be cured at trial, it is impossible for LT Game

21   International to cure the evidentiary defects in the proffered Feng and Chun testimony.

22        Similarly, Feng's declaration is likewise inadmissible as it is not based on personal

23   knowledge.  Federal Rule of Civil Procedure 56(c)(4) "requires that supporting and opposing

24   affidavits be made on personal knowledge of the affiant, set forth facts that would be admissible

25   in evidence, and show affirmatively that the affiant is competent to testify to the matters stated

26   therein." *Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240, 1243 (9th Cir. 1979); Fed. R. Civ. P. 56(c)(4);

27   *Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 957 F.Supp. 1184, 1193 (D. Nev. 1997) ("Affidavits

28

that do not affirmatively demonstrate personal knowledge" are insufficient to avoid entry of summary judgment.)

Feng has previously testified that ████████████████████████████████████
█████████████████████████████████████████████████████████████████████████
██████████████ (Ex. I, Feng Tr., Vol. I, 137:2-138:2 (████████████████████████)
Nevertheless, LT Game International claims that Feng's statements in his contradictory declaration about what others heard should preclude summary judgment. They do not. Feng lacks the competence and personal knowledge required under Rule 56(c)(4) to provide testimony through a declaration as to what SHFL purportedly said to non-parties to this litigation and the declaration must be disregarded. *Rebel Oil Co.*, 957 F.Supp. at 1193[8]

2.     *Allegations Regarding G2E Asia Do Not Raise an Issue of Material Fact.*

Seemingly recognizing that the purported false statements cannot serve an actionable basis for any of its claims, LT Game International tries to expand upon its common law unfair competition claims by claiming that SHFL engaged in unfair acts at G2E Asia 2012. None of the "evidence" presented by LT Game International supports its claims. Instead, the testimony contained in the Opposition or that is otherwise part of the record reveals that any actions taken regarding non-party LT Game's booth were carried out by other non-parties to this litigation.

Much of LT Game International's argument rests on the so-called "admissions" from Isaacs as to his interactions with Reed Exhibitions ("Reed") at G2E Asia 2012. While the Opposition repeatedly cites to this testimony claiming that it reflects SHFL giving an "ultimatum" or "directive" to Reed and demonstrates an attempt to "circumvent" Macau law, the actual testimony reveals no such thing. Instead, Isaacs testified that he ██████████████████████
█████████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████████
██████ (Opp., Ex. 4, 74:19-21) (emphasis added.)   There was no "ultimatum" as LT Game

---

[8] Pursuant to Federal Rule of Civil Procedure 56(c)(2), and for the reasons stated herein, SHFL hereby objects to and moves to strike all portions of Feng's declaration that constitute hearsay and that are not based on his own personal knowledge, specifically Paragraphs 8, 10-12, and 33.

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

International claims. LT Game International's attempts to rewrite Isaacs' testimony is telling of the lack of evidence it has to offer this Court.

The evidence uncovered during discovery tells a greatly different story than the fantasy weaved by LT Game International in its Opposition. Just before the start of the G2E Asia 2012,

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████ (Ex. J, Chun Tr., 53:7-9.)

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████ (*Id.;* Ex. K, Fahrenkopf Tr., 29:13-30:4, 62:5-12.)

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████ (Ex. H, Isaacs Tr., 71:5-8.) ██████

██████████████████████████ (*Id.*, 73:5-9.) █████████████████

████████████████████████████ (*Id.*, 72:6-9.)[9]

LT Game International is effectively seeking to hold SHFL responsible for the independent actions of the G2E Asia show organizers relating to a non-party to this action. But again, LT Game International has not presented any evidence whatsoever that SHFL directed, or had any authority to direct, or was in any way involved in Reed's actions relating to non-party LT Game's booth. By all accounts (and all evidence in this case), the decision came from the show organizers themselves. As the President of the AGA, the co-promoter of the show, explained, █

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

---

[9]     LT Game International's tortured interpretation and manipulation of the record renders it unrecognizable. For the sake of clarity, Brandon Knowles testified ███████████████

████████████████████████████████ (Ex. L, Knowles Tr. 169:24-170:11.) He also testified that ██████████████████ (*Id.*, 171:15-20.)    There were no "ultimatums" or "demands" made by any SHFL representatives, and certainly no "admissions" of wrongdoing.

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169



(Ex. K, Fahrenkopf Tr., 37:16-18, 63:6-16.)

(*Id.*, 52:13-17.)

(*Id.*, 53:14-20.)

LT Game International cannot present any evidence that SHFL engaged in any ufair practices or that it made any "ultimatums" to anyone relating to what transpired at G2E Asia 2012. There is no factual dispute that any actions taken in relation to non-party LT Game's booth at the show was done by the show-organizers, ***not*** SHFL. These events do not lead to genuine issues of material fact, and if the Court chooses not to dismiss the unfair competition claims under Rule 12(b), it should grant summary judgment in favor of SHFL.

### 3.     *LT Game International Has Not Presented Any Evidence Of Damage.*

In order to support ***any*** of its claims, LT Game International was required to present evidence that it suffered damage, such as evidence of lost contracts, as a result of SHFL's conduct rather than mere speculation. *Brooks Bros. v. Brooks Clothing of Cal.*, 60 F. Supp. 442, 447 (C.D. Cal. 1945) ("The law of damages . . . calls for proof of actual loss of sales in unfair competition."); *Southland Sod Famrs*, 108 F.3d at 1139; *Hilton Hotels Corp. v. Butch Lewis Productions, Inc.*, 862 P.2d 1207, 1210 (Nev. 1993); *In re Amerco Deriv. Litig.*, 252 P.3d 681, 702 (Nev. 2011). In fact, LT Game International was required to provide evidence of damage or harm "with ***reasonable certainty*** both as to their nature and in respect of the cause from which they proceed." *Union Oil Co. of California v. Hunt*, 111 F.2d 269, 277-78 (9th Cir. 1940) (emphasis added). It has done no such thing.

In support of its argument, LT Game International claims that it "lost" sales to the ▮▮▮ ▮▮▮ and that a sale to ▮▮▮▮▮ has been delayed. Neither serve as a basis for damages in this case nor create a genuine issue of material fact. LT Game International's primary damage claim is based on a purported "lost" sale to the ▮▮▮▮▮ LT Game International has failed to present ***any*** evidence that such a deal was ever in the works

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

other than Feng and Chun's unsupported assertions.  Highlighting the absurdity of basing any damage claim on the supposed deal, ██████████████████████████████ ████████████████████████████████████████████ ████████ (Ex. J, Chun Tr., 62:20-63:5) (emphasis added).   In essence, LT Game International's claim for damage is predicated on Chun's claim of an *unspoken agreement* to sign a deal.  LT Game International presented no documents reflecting this potential deal, no e-mails discussing this potential deal, no draft agreements, and no testimony from the ██████ demonstrating that any such deal was ever in the works.  Nevertheless, LT Game International asks this Court to take its word that it had a deal in place and that the deal was lost because of SHFL.  It takes far more than rank speculation and conjecture to survive summary judgment.  *See Brooks Bros.*, 60 F. Supp. at 447 (unfair competition claims require actual proof of loss).

Grasping at straws, LT Game International also claims, without any support other than Feng's accusations that it had a deal with ██████ that is now "delayed" because of "distaste over LT Game International's rumored plan to call him as a witness in this case." (Opp., 12:2-3, 19:25-28.)  Setting aside that LT Game International acknowledges that such a deal is not lost, LT Game International has in fact listed ████████████████████ as someone "likely to have knowledge of discoverable information *that plaintiff may use to support [] its claims or defenses*" as part of its FRCP 26(e) disclosures.  (Ex. B, Sauer Decl. at B-1, p. 3) (emphasis added).  When SHFL's sales representative inquired with him as to his being listed on LT Game International's disclosures, as he indicated he had no knowledge of LT Game International's claims.  (Ex. B, Sauer Decl. at ¶ 6.)  Based on his request, SHFL's representative provided him with a copy of LT Game International's disclosures, and ██████ thanked her for doing so.  (*Id.* at ¶¶ 8-9.)  LT Game International has presented no evidence that anything SHFL has done has ever led to a lost sale with either the ██████████████████.

### 4.   *Settlement Offers Do Not Raise Genuine Issues of Material Fact.*

In another bizarre turn, LT Game International points to settlement offers between a SHFL subsidiary and non-party LT Game as purported "evidence" of unfair competition.  (Opp., 5:16-23.)  LT Game International alleges that SHFL attempted to ██████████████████

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

1

2                    (*Id.*; Ex. J, Chun Tr. at 48:11-50:19.)

3

4          (*Id.*)  As for the second round of settlement discussions,

5                                                          (*Id.*, 70:8-71:25.)  Not even

6    Chun testified that he felt threatened or coerced into doing anything, and he never did.

7          Even if the settlement discussions between non-party LT Game and SHFL's subsidiary

8    were relevant, which they were not, they certainly do not constitute evidence of unfair

9    competition.   Of course, "Federal Rule of Evidence 408 bars the admission of settlement

10   agreements to prove liability." *Brocklesby v. United States*, 767 F.2d 1288, 1292 (9th Cir. 1985).

11   This is because "[t]wo principles underlie Rule 408: (1) '[t]he evidence [of compromise] is

12   irrelevant, since the offer may be motivated by desire for peace rather than from any concession

13   of weakness of position;' (2) '[a] more consistently impressive ground is promotion of the public

14   policy favoring the compromise and settlement of disputes.'" *Hudspeth v. C.I.R.*, 914 F.2d 1207,

15   1213-14 (9th Cir. 1990)(quoting Fed. R. Evid. 408 advisory committee's note).  Accordingly, LT

16   Game International's description of these settlement discussions and offers is not only irrelevant,

17   but also inadmissible to demonstrate liability in any event.

18          **5.**          *Declaration Fails to Raise a Genuine Issue of Material Fact.*

19          LT Game International's effort to concoct an issue of fact by way of a declaration from

20                    as to a conversation that took place months after the close of discovery is equally

21   misplaced.[10]  First, the declaration does not support LT Game International's argument that it

22   suffered damages by entering into an indemnification agreement with                       as a

23   result of anything SHFL did or said.  Such a claim is directly contrary to the position LT Game

24   International raised in a separate action in the District of New Jersey where it claimed a third

25   ───────────────────────

26   [10]  As LT Game International seeks to proffer and rely upon evidence relating to events that purportedly
     took place well after the close of discovery, SHFL will necessarily seek to depose ███ in advance of trial

27   if the claims are not adjudicated by way of this Motion.  Similarly, as LT Game International seeks to rely
     upon declarations from individuals that are purported experts on patent law (Meredith) and Macau law

28   ███ SHFL would likewise seek to depose these previously undisclosed experts or otherwise have any
     such declarations or testimony presented by them excluded from the record.

party, DEQ, made false statements that damaged its relationship with Commerce.  (Ex. M, DEQ Compl.); *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996) (judicial estoppel "precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position").   Further, these types of indemnification provisions are common in the industry. (Ex. F, Rumbolz Tr. 84:14-23.)  In fact, ████████████████████████████████████████ (Ex. A, Snow Decl., ¶ 10.)   For LT Game International to claim damage as a result of the inclusion of an industry standard provision in a contract is preposterous.

████████████████████████████████████████
████████████████████ (*Id.*, ¶ 5-9.) ██████████
████████████████████████████████████████
████████████████████████████████████████
██████████████ (*Id.* at ¶¶ 5-6, 9.)  Even if those discussions could somehow be misconstrued as "threats," there is still no evidence to support that any statements were mad in "bad faith" as would be required to support a claim for unfair competition.  *See Fisher Tool Co., Inc. v. Gillet Outillage*, 530 F.3d 1063, 1068 (9th Cir. 2008).   In order to support such a claim, LT Game International would have to produce evidence that go beyond the mere allegation of enforcement of intellectual property rights. *See Cummins-Allison Corp. v. Glory, Ltd.,* 02 C 7008, 2003 WL 22169756 (N.D. Ill. Sept. 18, 2003).  LT Game International has not presented any such evidence.

In fact, a party with a pending patent application is required to notify potential infringers of that fact in order to enforce certain rights in the future. *See* 35 U.S.C. § 154(d); *see also Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998) ("[I]t is not improper for a patent owner to advise possible infringers of its belief that a particular product may infringe the patent.")   Notably, SHFL owns patents and other intellectual property rights associated with features on, related to, and associated with its SHFL Fusion product.[11]

---

[11]   *See* U.S. Pat. No. 6,789,801 (Baccarat Side Wager Game); U.S. Pat. No. 7,309,065 (Interactive Simulated Baccarat Side Bet Apparatus and Method); U.S. Pat No. D615,600 (Card Dealing Dispenser); U.S. Patent No. D646,338 (Card Dealing Dispensing Cartridge); U.S. Patent No. 7,407,438 (Modular

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

**6.    *LT Game International's Experts Do Not Raise Issues of Material Fact.***

Seeking to avoid summary judgment at all costs, LT Game International makes the bald assertion that simply because it has proffered two witnesses as experts, summary judgment is not appropriate.  Again, that is not the law.  "[A] party may not avoid summary judgment solely on the basis of an expert's opinion that fails to provide specific facts from the record to support its conclusory allegations." *Evers v. General Motors,* 770 F.2d 984, 986 (11th Cir. 1985); *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1116 (9th Cir. 1989) ("[W]here the evidence is as clear as that in this record, the court is not required to defer to the contrary opinion of plaintiffs' 'expert.'")

LT Game International's experts fail to support any conclusions relating to liability or even damages.  Instead, both of LT Game International's experts admit that they ████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████  (*See* Dkt. 91, Meister Decl., Ex. 1 at 2; Dkt. 92, Giuffre Decl., Ex. 1 at 3.)  LT Game International cannot hide behind its experts' regurgitation and assumption of allegations as purported "evidence" of liability or damages to avoid summary judgment.  *See In re Trasylol Prods. Liability Litigation*, 709 F. Supp. 2d 1323, 1346 (S.D. Fla. 2010) (refusing to consider proffered expert that merely "regurgitates" facts and then reaches conclusory opinions assumes the role of advocate and invades the province of the trier of fact).

**E.    LT Game International Lacks Standing.**

Although LT Game International seeks to brush it aside, the simple truth is that it lacks standing to maintain this action in the first instance.  LT Game International has presented no evidence that it has suffered a non-speculative "injury in fact" as it admits that it was never going to enter into any agreements at issue in this litigation in the first place, another company was.  (Ex. N, Feng Tr., Vol. II, 22:7-12.)  Such an admissions strips LT Game International of Article III standing.  *See Henry v. Circus Circus Casinos, Inc.*, 223 F.R.D. 541, 543 (D. Nev. 2004).

Dealing Shoe for Casino Table Card Games); U.S. Patent No. 7,434,805 (Intelligent Baccarat Shoe); U.S. Pat. App. No. 2013/0184044.

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169

1   LT Game International similarly lacks prudential standing.  Even under its own version of

2   the facts, LT Game International bases its claims on SHFL's purported statements regarding LT

3   Game and its products.  As such, any alleged harm to LT Game International (the sole Plaintiff in

4   this action) is derived through its relationship with its licensor, LT Game.  As explained in the

5   Motion, LT Game International is no different from any of the at least five other entities who have

6   distributed LT Game's products or services.  (Ex. N, Feng Tr., Vol. II, 27:6-17; Ex. O, ▮▮▮

7   ▮▮▮ Ex. P, ▮▮▮▮▮)  Under LT Game International's theory, each and every

8   entity would have independent standing to assert "claims on behalf of itself" and seek damages

9   based upon its status as an LT Game licensee, wherever that may be on the licensee food chain.

10  This theory has been expressly rejected by other courts.  *Conte Bros. Auto., Inc. v. Quaker State-*

11  *Slick 50, Inc.*, 165 F.3d 221 (3d Cir. 1998); *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d

12  106, 118 (2d Cir. 2010).

13  **III.    CONCLUSION**

14  Try as it may, LT Game International has no basis to assert any claims against SHFL.

15  While LT Game International seeks to point the finger at SHFL for its failure to secure more

16  placements in the United States and abroad, it has no evidence to support such a claim.  That is

17  because there is none.  LT Game International's distortion of testimony of SHFL's representatives

18  and conclusory, hearsay assertions do not save its futile claims.  In light of the foregoing

19  deficiencies, this Court should dismiss the latest complaint in its entirety or otherwise dispose of

20  the claims by summary judgment.

21  DATED this 27ᵗʰ day of June, 2014.

22  PISANELLI BICE PLLC

23  By: _____

24  James J. Pisanelli, Esq., Bar No. 4027
    Christopher R. Miltenberger, Bar No. 10153

25  Eric T. Aldrian, Esq., Bar No. 11897
    3883 Howard Hughes Parkway, Suite 800

26  Las Vegas, Nevada 89169

27  *Attorneys for SHFL entertainment, Inc.,*

28  *f/k/a Shuffle Master, Inc.*

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on the ___27th___ day of June 2014, I electronically filed the foregoing **REPLY IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED COMPLAINT, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT** using the Court's CM/ECF system which will send notification to the following:

Jacquelyn S. Leleu, Esq
Amanda C. Yen, Esq.
Joseph P. Schrage, Esq.
McDONALD CARANO WILSON LLP
2300 W. Sahara Avenue, Suite 1000
Las Vegas, Nevada 89102
(702) 873-4100

and

Dariush Kayhani (*pro hac vice*)
MEREDITH & KEYHANI, PLLC
330 Madison Avenue, 6th Floor
New York, New York 10017
(212) 760-0098

*Attorneys for Plaintiff LT Game International, Ltd.*

An employee of PISANELLI BICE PLLC

PISANELLI BICE PLLC
3883 HOWARD HUGHES PARKWAY, SUITE 800
LAS VEGAS, NEVADA 89169