1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

LT International Ltd.,

          Plaintiff,

             v.

Shuffle Master, Inc.,

          Defendant.

Case No.: 2:12-cv-1216-JAD-GWF

**Order Granting in Part Defendant's Motion to Dismiss [Doc. 119]**

Plaintiff LT International Ltd. ("LT") was given leave to amend its complaint for the second time to more adequately allege facts consistent with Rule 9(b)'s particularity standard. Doc. 112. LT filed an amended complaint, and defendant Shuffle Master, Inc. now moves to dismiss it and alternatively asks for summary judgment, arguing that LT's allegations still fall short of Rule 9's particularity requirement. Doc. 119. Even assuming *arguendo* that LT has standing to bring this claim, it has twice failed to allege its Lanham Act claim with requisite particularity, and I dismiss the claim. Having dismissed LT's only federal claim, I also decline to exercise supplemental jurisdiction over LT's non-federal claims, and I thus dismiss this case in its entirety.

## Background

The relevant background and procedural history of this action is described in my prior order, Doc. 112, and incorporated here by reference. I also incorporate by reference the legal standards of review and conclusions from Doc. 112, specifically my conclusions that LT's Lanham Act claim for false advertising is "grounded in fraud" such that it triggers the heightened pleading standard in Rule 9(b). Doc. 112 at 4-6. I note that, in my prior order, I concluded that, although LT had not explicitly alleged fraud, it had alleged misrepresentation, which is widely considered to be a "species" of fraud subject to Rule 9(b) scrutiny. Doc. 112. As a result, any fraud-based allegations required LT to "identify the

1

1  who, what, when, where, and how of the misconduct charged, as well as what is false or

2  misleading about the purportedly fraudulent statement, and why it is false."[1]  This increased

3  detail is required "to give defendants notice of the particular misconduct which is alleged to

4  constitute the fraud charged so that they can defend against the charge and not just deny that

5  they have done anything wrong."[2]  I then found, after applying the standard from *Vess v.*

6  *Chiba-Geigy Corp. USA*[3] to LT's Lanham Act claim, that LT had not sufficiently pled its

7  fraud-based allegations and that its remaining non-fraud-based allegations did not state a

8  plausible claim for relief under Rule 8(a).  Doc. 112 at 7-9.

9          Near the end of my order permitting leave to amend, I cautioned LT that it should "err

10  on the side of being overly inclusive and descriptive with the how, what, and why, because

11  the Court is unlikely to permit amendment beyond the opportunity that is being offered by

12  this order absent truly extraordinary circumstances.  Considering that discovery has been

13  completed, the Court can perceive no obstacle to comprehensive factual inclusion except the

14  true lack of a cognizable claim for relief."  Doc. 112 at 17.

15                                              **Discussion**

16          LT's Third Amended Complaint continues to allege 15 U.S.C. § 1125(a)(1)(B) of the

17  Lanham Act as the sole basis for federal recovery.  Doc. 115 at 8.  This provision provides

18  liability for false advertising, which requires a plaintiff to establish: (1) a false statement of

19  fact was made by the defendant in a commercial advertisement about its own or another's

20  product; (2) the statement actually deceived or has the tendency to deceive a substantial

21  segment of its audience; (3) the deception is material in that it is likely to influence the

22  purchasing decision; (4) the defendant caused its false statement to enter interstate

23  commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false

24  statement, either by direct diversion of sales from itself to defendant or by a lessening of the

25

26          [1] *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010).

27          [2] *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

28          [3] 317 F.3d 1097, 1105 (9th Cir. 2003).

                                                  2

goodwill associated with its products.[4]  It is theoretically possible to allege a false advertising claim without triggering Rule 9(b) because intent or scienter is not explicitly required.[5]

### 1.      LT's new allegations are grounded in fraud.

Shuffle Master moves to dismiss because, *inter alia*, LT's new Lanham Act allegations still fail to meet the particularity standard under Rule 9(b).  Doc. 119.[6]  LT's new complaint excises all references to "misrepresentation" and now claims that Shuffle Master merely made a series of "false" statements relating to both LT's services and its company in general.  *See* Doc. 115.  But a finding that allegations are subject to Rule 9(b) is not a matter of adding "magic words"; instead, "[f]raud can be averred . . . by alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used)."[7]

When read in context, LT's allegations imply an intent to deceive—i.e., fraud.  Each of LT's allegations is set against a backdrop that Shuffle Master "has systematically been unfairly competing with the LT Game Group in gaming markets throughout the world through the use of threats, disparagement of the LT Game brand and its products, and *direct and indirect interference* with Plaintiff's business deals and prospective deals."  Doc. 115 at 3 (emphasis added).  Nowhere in the newly amended complaint does LT allege that any of Shuffle Master's conduct was negligent or otherwise lacked an intent to deceive; indeed, its allegations plainly suggest the opposite.  *See id.* at 7 (alleging that Shuffle Master's statements regarding patent infringement were "baseless and made in bad faith."); *id.* (alleging that Shuffle Master's CEO sent a series of emails to an industry representative indicating that Shuffle Master could not be a member of an association that would admit an

---

[4] *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

[5] *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009).

[6] In addition to its allegations regarding particularity, Shuffle Master also contends that LT lacks Article III and prudential standing, that LT cannot even plead a plausible claim for relief under Rule 8, and that it lacks admissible evidence to support its claims (if the motion is converted to one for summary judgment, which I do not find necessary).  Doc. 118 at 10-16, 21-23.  I need not address these arguments because they do not impact the disposition of this motion.

[7] *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003).

1  unethical business like LT as a member).  LT's allegations of a "uniform pattern of conduct,"

2  when taken as a whole, are clearly "grounded in fraud," and Rule 9(b) requirements apply to

3  all false statement allegations.

4         Moreover, LT's Lanham Act allegations are limited to those allegations in the

5  complaint where allegedly false statements were made.  LT alleges that "Defendant has made

6  *false statements* about Plaintiff's brand and its products to members of the gaming

7  community, including but not limited to statements that LT Game Group products and

8  Plaintiff's sale of the LTMG in the U.S. infringes Defendant's patents, the LTMG cannot be

9  sold outside of Macau, the LT Game Group bribed Macau judges, and the LT Game Group is

10  an unethical company . . . .  Defendant's *false statements* have deceived Plaintiff's current

11  and prospective customers and materially influenced their purchasing decisions and

12  constitute unfair competition under 15 U.S.C. § 1125(a)(1)(B) of the federal Lanham Act."

13  Doc. 115 at 8 (emphasis added).

14         LT's Lanham Act claim is grounded in fraud and limited in scope to Shuffle Master's

15  false statements, I consider only the allegations of false statements when analyzing this

16  claim.  I thus employ the same method as I did in my prior order: isolating the fraud-based

17  allegations under Rule 9(b), and then considering whether any properly pled allegations,

18  when conjoined with the well-pled non-fraud allegations, give rise to a plausible Lanham Act

19  claim.

20         **2.      None of LT's fraud-based allegations meet the particularity standard.**

21         LT alleges that "After the 2012 G2E Asia, [LT Game marketing and sales executive

22  Linyi] Feng met with Jeff Voyles . . . .  During the meeting, Voyles told Feng that while he

23  was on a flight from Macau on or about May 24, 2012, he witnessed Defendant making false

24  statements to Plaintiff's prospective customers, business affiliates, and members of the

25  gaming community that the LT Game Group has bribed judges in Macau and engaged in

26  other unlawful activities."  Doc. 115 at 6.  LT similarly alleges that "On July 4, 2013, Feng

27  attended a meeting in the Philippines with Melco Crown (Philippines) Resort Corp. . . . Vice

28  Presidents Lisa Evans and Gary Hann verbally, in person, told Feng that a representative of

4

1    SHFL told her that the LTMG could not be sold outside of Macau." Doc. 115 at 7.  These

2    allegations do not satisfy the particularity standard because neither allegation indicates *who*

3    made the statement, instead referring only to "Defendant" and "a representative of Shuffle

4    Master."  Discovery should have uncovered the name of the Shuffle Master agent or

5    employee who made the statements to Voyles, Evans, and Hann; and LT's failure to reflect

6    this specific information in the complaint suggests it lacks this key information and prevents

7    me from considering them under *Vess*.  I thus disregard these allegations in evaluating

8    whether LT has pled a Lanham Act claim.

9         LT also alleges that "Following the 2012 G2E Asia, SHFL contacted Jeff Harris, Vice

10   President of Casino Operations at Commerce Casino in California, and told him that the

11   LTMG was infringing its U.S. patent.  Because of SHFL's false allegations of patent

12   infringement, Commerce Casino was fearful of potential litigation and required Plaintiff to

13   provide financial assurances and satisfy unusually burdensome insurance and

14   indemnification demands." Doc. 115 at 6.  Later, LT alleges that "Plaintiff's sales

15   representative, Bryan Jenkins, learned from Hakan Dagtas, Chief Gaming Operating Officer

16   at Genting Group's Resort World Manila, that a representative of SHFL told him that the

17   LTMG cannot be sold outside of Macau." Doc. 115 at 7.  Neither of these allegations

18   satisfies the particularity standard because the first allegation only points to sometime after

19   the 2012 G2E, and the second has no time-frame at all.  Secondarily, they continue to fail to

20   identify the person responsible for these alleged communications.  These allegations are thus

21   disregarded under *Vess*.

22        LT also alleges that "In June 2012, Feng met with Michael Patterson, Barona Casino's

23   Vice President of Table Games, on the casino floor at Barona Casino in San Diego,

24   California.  During that meeting, Patterson expressed concern over the events at the 2012

25   G2E Asia and told Feng that LT Game Group is infringing on SHFL's U.S. intellectual

26   property rights, and that Plaintiff's sale of the LTMG in the U.S. infringes SHFL's

27   intellectual property rights." Doc. 115 at 6-7.  The problem with this allegation is that there

28   is no indication how Patterson came to know that LT was allegedly infringing on Shuffle's

5

property rights—and thus it is not clear if LT made any statement to this effect. This allegation will also be disregarded.

Finally, LT alleges that "On June 11, 2012, SHFL CEO Gavin Isaacs sent a series of emails to Association of Gaming Equipment Manufacturers Executive Director, Marcus Prater. In the emails, Isaacs called LT Game "an unethical company" and informed Prater that "LT Game cannot join" AGEM because SHFL "could not be a members of an association who would have such low standards would allow such an unethical company to be a member." Doc. 115 at 7. Although apparently intended to be pled as a fraud allegation, this statement that Shuffle Master is "unethical"—in context of the entire email exchange between Isaacs and Prater[8]—Isaacs's statement is plainly opinion, not "a statement of fact capable of being proved false" and thus is mere opinion, and not actionable for purposes of the Lanham Act.[9]

In sum, none of the allegations attempting to set out a false statement either satisfied Rule 9(b)'s particularity standard or describes actions that can be redressed cognizable under the Lanham Act. All must be excluded for purposes of assessing LT's Lanham Act claim.

**B. LT's remaining allegations do not establish a plausible claim for relief.**

LT's remaining allegations do not set forth a plausible claim for relief because the plain language of LT's Lanham Act charge relies entirely on defendant's false statements to make out its claim. While LT also alleges that its "prospective deals and contracts have been negatively impacted in terms of bargaining power, opportunity, scope of commitments, terms, and value as a result of Defendant's statements and actions," this particular allegation is not specifically alleged to be "unfair competition." *See* Doc. 115 at 8. Therefore, LT's

---

[8] I may consider documents explicitly referenced in a complaint without converting a motion to dismiss to one for summary judgment when the authenticity of those documents is not disputed. *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Because this statement is explicitly referenced in the complaint, Doc. 115 at 7, LT attaches a copy of the email string between Isaacs and AGEM Executive Director Marcus Prater where Isaacs's "unethical" comment occurred.

[9] *Coastal Abstract Service, Inc. v. First American Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999) (noting that statement that company was "too small" to handle a certain business operation was opinion).

contentions that Shuffle executives attempted to "strong arm" LT's participation in a shared patent pool, or its allegations that it used its influence to get LT to drop its injunction at the G2E trade show (for which no allegations of false statements were made), or any other "actions" or "statements" which were not false, are not within those applicable to LT's Lanham Act claim.

In sum, and despite explicit instructions and two opportunities to amend its complaint to include the facts gleaned from discovery, LT fails to adequately allege a Lanham Act claim. Shuffle's motion to dismiss LT's Lanham Act claim is granted.

## C.      The court declines to retain supplemental jurisdiction over LT's remaining claims.

Shuffle Master additionally argues that if LT's Lanham Act claim is dismissed, I lack original jurisdiction over LT's Nevada- and Macao-based claims and should dismiss them. Doc. 118 at 20. In response, LT contends that I should exercise my discretion to hear these supplemental claims, in part because the parties have been litigating this case for a considerable amount of time, and because LT's complaint contains allegations under Macao law, in which neither I nor a state court has particular expertise. Doc. 127 at 21-22.

Federal jurisdiction in this case is premised on the pendency of a federal question: LT's Lanham Act claim.[10] Supplemental jurisdiction is a doctrine of discretion, not of right.[11] A federal district court may decline to exercise supplemental jurisdiction over a state law claim if "(1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). The decision whether to decline to exercise supplemental jurisdiction under Section 1367(c) should be informed by the values of

---

[10] *See* Doc. 115 at 2; 28 U.S.C. § 1367.

[11] *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 172 (1997); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

1    economy, convenience, fairness, and comity.[12]

2    Economy, convenience, fairness, and comity compel me to decline to continue to

3 exercise supplemental jurisdiction over plaintiff's remaining claims under 28 U.S.C. §

4 1367(c).  The dismissal of LT's Lanham Act claim leaves it with only Nevada state law

5 claims and a claim under Macao law.  "[I]n the usual case in which all federal-law claims are

6 eliminated before trial, the balance of factors . . . will point toward declining to exercise

7 jurisdiction over the remaining state-law claims."[13]  Although LT suggests that I should

8 retain jurisdiction given the relatively long pendency of this case in federal court, I note that

9 the delays are of LT's own making—as it was LT who failed to adequately plead its

10 claims—not once, but twice—necessitating these full rounds of dismissal motion practice.

11 Accordingly, I decline to retain supplemental jurisdiction over plaintiff's remaining claims,

12 dismiss this case under 28 U.S.C. § 1367(c), and thus deny the remainder of the motion to

13 dismiss as moot.

14                                **Conclusion**

15    Accordingly, based upon the foregoing reasons and with good cause appearing and no

16 reason for delay,

17    It is **HEREBY ORDERED** that Shuffle Master, Inc.'s Motion to Dismiss **[Doc. 119]**

18 **is GRANTED** in part and DENIED WITHOUT PREJUDICE in part:

19    LT Game's Lanham Act claim is DISMISSED;

20    I decline to exercise supplemental jurisdiction over all remaining claims pursuant to

21 28 U.S.C. § 1367, and I dismiss these claims, subject to re-filing in the appropriate court of

22 general jurisdiction.  The Clerk of Court is instructed to close this case.

23    DATED: November 24, 2014.

24                                _____

25                                Jennifer A. Dorsey
                                  United States District Judge

26

27    [12] *Acri v. Varian Associates, Inc.,* 114 F.3d 999, 1001 (9th Cir. 1997) (en banc).

28    [13] *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).